Exhibit B



# O P E R A T I O N S   M A N U A L
### D E N V E R   P O L I C E   D E P A R T M E N T

| 503.00  PERFORMANCE | REVISED: 7/18/2025 |
|---|---|
| | PAGE: 1 OF 39 |

**503.01  COMPLAINT AND DISCIPLINE PROCEDURES FOR SWORN OFFICERS**

**(1)    POLICY:**

The policy of the Denver Police department in creating a complaint and discipline process is to establish a set of accountability standards that address how complaints of officer misconduct are made, filtered, processed and evaluated at all levels. These standards are driven by the mission, vision, and value statements of the department, and find as their chief cornerstones the Law Enforcement Code of Ethics and the rules and regulations of the department. These documents set the foundation for accountability of the department and its members to individuals whom it serves, to the greater law enforcement community of which it is a member and to the Constitution of the United States, which the department has sworn to uphold.

The department recognizes the vital importance of the internal investigation process, and that no system of discipline can be effective without investigations that can be considered by members of the department and the general public as unbiased and trustworthy. The department is committed to investigating all allegations of officer misconduct in a fair, thorough, and timely manner in accordance with accepted department policies and procedures. Such investigations must be conducted with full regard for the Officer's Bill of Rights and all other rights and respect due to fellow officers. Likewise, they must be conducted with regard for the rights and respect due to non-sworn members of the department, all complainants and witnesses and all other individuals. The administration of the discipline process will not discriminate against anyone on the actual or perceived basis of race, color, creed, national origin, ancestry, gender, sexual orientation, age, religion, political affiliation, physical or mental disability, military status, marital status, or other basis protected by Federal, State, or local law or regulation. The department further believes that truthfulness is vital in an internal investigation and is expected and demanded from all department personnel who may be the subject of or a witness in an investigation.

The department understands that timeliness in the investigation of misconduct allegations, and when warranted the imposition of discipline, are critical components of the complaint and discipline process. Unnecessary delays may be unfair to the involved officers, community members alleging or harmed by officer misconduct and the department as a whole and will be avoided to the extent possible. However, issues related to timeliness are not considered mitigating factors, or grounds to decline the imposition of discipline.

The department also recognizes its legal obligations to disclose to prosecuting agencies information that may impact the credibility of officers in criminal prosecutions.

This policy applies only to members of the classified service of the Denver Police Department.

**(2)    GUIDELINES AND DEFINITIONS:**

**Subject Officer:** The officer under investigation for possible misconduct.

**Complaint:** An allegation of misconduct.

**Service Complaint:** A member of the public's complaint that pertains generally to services or policies of the department, but which is not an allegation of misconduct against an employee.

**Misconduct:** A violation of a law, policy, procedure, or rule and regulation. There are several classifications of misconduct:

- **Minor Misconduct:** Potential violations of policy or procedure that have minimal adverse impact on the operation or integrity of the department and that are not likely to result in a formal disciplinary action against a named employee.

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

- **Pattern Misconduct:** A pattern of potential misconduct by an officer or group of officers that includes, but is not limited to, allegations or complaints over time that indicate conduct of more concern than that created by infrequent or isolated incidents of complaints or unacceptable conduct.

- **General Misconduct:** All potential violations that do not fall into the categories of minor, serious, or pattern misconduct are considered general misconduct. Examples of general misconduct include but are not limited to: violation of a policy that requires a fixed penalty such as failure to attend court, failure to attend scheduled training, or failure to complete firearms qualification.

- **Serious Misconduct (including Conduct Prohibited by Law):** Potential violations of policies, procedures, rules, or regulations that have an adverse impact on the operation or integrity of the department and that, if proven, would likely result in formal disciplinary action against a named employee. Investigations involving allegations of serious misconduct or law violations will be conducted by the Internal Affairs Unit. Examples of serious misconduct include but are not limited to: commission of a deceptive act, sexual misconduct, inappropriate force, harassment, discrimination, and conduct prohibited by law.

**Complaint Intake:** The initial fact-finding stage of an investigation in which a sergeant or above determines whether or not the complaint, if true, would constitute misconduct, or if the issue amounts to a service complaint.

**Denver Police Department Discipline Handbook: Conduct Principles and Disciplinary Guidelines:** The official guide adopted by the Executive Director of Safety and Chief of Police to be utilized by all persons responsible for making disciplinary recommendations and determinations. The *Discipline Handbook* sets forth the procedures for determining whether officers have violated DPD rules or policies and, if so, guidelines for making penalty recommendations and determinations.

**Discipline Matrix:** The official guide adopted by the Executive Director of Safety and Chief of Police establishing penalty ranges and limits for misconduct to be utilized when making penalty recommendations and determinations.

**Dismissal:** The Chief of Police (or designee) may elect not to investigate and thereby dismiss certain complaints. The grounds for dismissal of complaints are outlined in OMS 503.01(5).

**Formal Investigation:** All allegations of misconduct that are not classified as minor misconduct, service complaints, or dismissals will be formally investigated. An Internal Affairs Unit complaint number will be issued for each formal investigation and an official disposition will be handled by the Internal Affairs Unit, with the exception of scheduled discipline, which will be conducted by the subject officer's chain of command. Nothing will prevent bureau or district level supervisory or command officers from conducting an initial investigation prior to forwarding the issue to the Internal Affairs Unit for a full investigation per procedures outlined in OMS 503.01.

**Informal Investigation:** Informal investigations are conducted when there is a complaint of minor misconduct. If applicable, the investigation should include debriefing the subject officer regarding a complainant's concerns about the officer's actions or quality of service. The informal investigation is an expedited process that does not result in a formal finding or imposition of discipline.

**Investigative Review Process (IRP):** The Investigative Review Process (IRP) is a review process consisting of two (2) phases. Phase I consists of a review by the subject officer (and his or her representative) of the Internal Affairs Unit (IA) investigative reports. Phase II consists of a meeting between the subject officer, his or her representative, and the IA commander with the intent of reaching an agreement as to the material facts of the case.

**Deliberative Process:** The Office of the Independent Monitor, the Citizen Oversight Board, and the officers and residents who serve on the department's internal review boards such as, Use of Force Review Board, and Tactics Review Board are all part of the city's deliberative process regarding investigative and disciplinary procedures for sworn personnel. As such, all information learned by any of those persons or groups during the exercise of their duties will be protected by the deliberative process privilege.

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

**Scheduled Discipline:** Those rules, regulations, and policies for which violations carry penalties that are defined by a table or schedule. A complete listing of these policies can be found in Appendix F of the Discipline Handbook.

**(3)** **ROLES AND RESPONSIBILITIES:**

    a.    Individual Officer Responsibility:

        1.    All officers of the department will report possible misconduct by other officers to a supervisor, command officer, or the IA regardless of whether the reporting officer has firsthand knowledge of, or has otherwise learned of, the alleged misconduct. If the possible misconduct involves the officer's supervisor or command officer, the reporting officer may report the possible misconduct directly to the IA, the Office of the Independent Monitor (OIM) or the Chief of Police.

        2.    When any member of the Denver Police department (on or off-duty) is involved in an incident occurring within the City and County of Denver, that requires, or may require police attention, the investigating officer or the involved officer will immediately notify a Denver Police department supervisor, command officer, or IA. For incidents occurring outside the City and County of Denver, the involved officer may request that the investigating officer make the notification; however, the ultimate responsibility for notification lies with the involved officer.

    b.    Mandatory notification requirements apply to the following circumstances:

        1.    An off-duty officer exercises police authority that results in an arrest and/or use of force.

        2.    **On-duty motor vehicle accidents in the City and County of Denver:**

            A supervisor or command officer will be notified immediately when an employee is involved in a traffic accident while on duty, whether or not there is property damage or injury. If the accident occurs within the City and County of Denver, a supervisory or command officer will respond to the scene and determine the appropriate course of action.

        3.    **On-duty motor vehicle accidents outside the City and County of Denver:**

            A supervisor or command officer will be notified and will make a determination as to whether their response or that of the Internal Affairs Unit is required based on the criteria outlined in OMS 503.01(4).

        4.    **Off-duty motor vehicle accidents in the City and County of Denver:**

            When an off duty Denver police officer, driving their private vehicle is involved in a traffic crash occurring within the city limits, and at least one of the criteria in OMS 203.02 (1) is present, the officer will notify Denver 911 and request that an on-duty officer be sent to the scene to investigate the crash. The investigating officer will also notify a supervisor who will respond to the scene and ensure a thorough investigation. If appropriate, charges will be placed against one or more involved drivers.

        5.    Any sworn personnel who becomes aware that they are under investigation or charged with any crime.

        6.    An officer is the victim of a crime (crimes against persons' statute or ordinance) and police are notified, or reasonably should have been notified.

        7.    An officer is arrested, charged, or convicted of a criminal offense.

        8.    An officer is charged with a traffic offense of eight (8) or more points.

        9.    An officer's driving privileges are suspended or revoked.

        10.    An officer is served with a restraining/protection order issued as a result of alleged domestic violence or criminal activity.

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

      11.    Any incident that has the potential for police involvement or could have a pronounced negative impact on the professional image of the department, and the officer is directly involved.

      12.    Whenever an officer learns or is investigating an incident where criminal charges are being considered on a Denver Police Officer, Denver Sheriff, Denver Firefighter, or any other law enforcement officer within the City and County of Denver, the Internal Affairs Unit will be notified immediately to assess whether this unit will handle the filing and/or charging of the officer, sheriff, or firefighter.

c.    Officers will cooperate in a department investigation and will answer questions by, or render material and relevant statements to, the appropriate supervisor, command officer, or IA investigating officer. Officers will answer all questions fully and truthfully and will not omit any material facts.

d.    For the duration of the complaint process, including the complaint intake, formal investigation, and IRP, the subject officer and his or her representative are prohibited from contacting and/or interviewing any witnesses or conducting any type of investigation into the allegations. The only officers authorized to interview witnesses or the subject officer, or to conduct any further investigation of a case on behalf of the department or its members are those investigating officers designated by the Commander of IA or the Chief of Police.

e.    A subject officer will not be armed during a pre-disciplinary meeting (Chief's Hearing) with the Chief of Police (or designee).

f.    General Supervisor and Command Officer Responsibilities:

      1.    A supervisor or command officer must assume the duties and obligations of his or her rank in the investigation of misconduct by police personnel.

      2.    A supervisor or command officer will continually examine areas of the police operation under his or her purview.

      3.    A supervisor or command officer will not look to higher authority to initiate investigations when the actions in question are within his or her own authority.

      4.    The Internal Affairs Unit may be requested when the complexity of the case justifies such assistance.

      5.    A supervisor or command officer of a division, bureau, or district will resolve minor procedural violations in accordance with this policy. If the supervisor/command officer determines that training, oral admonishment, counseling, etc. is an appropriate action involving an employee, the command officer will be responsible for ensuring that the training, oral admonishment, counseling, etc., is accomplished and documented.

      6.    A supervisor or command officer of a division, bureau, or district will conduct an investigation in accordance with this policy.

      7.    A supervisor or command officer of a division, bureau, or district will immediately report to IA all allegations of serious misconduct, including conduct prohibited by law.

      8.    A supervisor or command officer of a division, bureau, or district will, in a timely manner, notify the IA regarding allegations of general misconduct or pattern misconduct that is not serious in nature and does not constitute conduct prohibited by law.

      9.    Supervisors and command officers will obtain the assistance of IA or a superior officer when assistance is needed with the complaint process or while conducting a complaint intake or investigation.

      10.    If a supervisor or command officer observes or learns of possible misconduct by an officer not under his or her supervision, the supervisor or command officer will notify the supervisor or command officer of the subject officer. (See OMS Duties and

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

Responsibilities section regarding responsibilities of all supervisory officers [including command officers] with respect to discipline and conduct of officers.)

11.    Any command officer (or supervisor, with the approval of a higher-ranking officer) may relieve an officer of duty when the charges are of a serious nature and it appears that such action would be in the best interest of the department or the officer. Officers will surrender their badges and identification cards when relieved of duty.

12.    Whenever it becomes necessary to place a Denver police officer in any detention facility, the ranking supervisor or command officer handling the case will immediately relieve the officer of duty and retain all department property in the officer's possession. Requests to hold or obtain the subject officer's police uniform will be made to the proper authority in the detention facility. The ranking supervisor or command officer will immediately notify the IA of the subject officer's detention or incarceration.

13.    The IA commander, the Chief of Police or the Executive Director of Safety will report all allegations of serious misconduct, including conduct prohibited by law to the Office of the Independent Monitor within three business days of becoming aware of the allegations.

g.   Investigating Supervisor and Command Officer Responsibility:

1.    The Deputy Chief, division chief, or bureau or district commander will review the matter to determine whether the investigation should be conducted at the division, bureau, or district level or forwarded to the IA. The Deputy Chief, division chief, or bureau or district commander is responsible for ensuring that all original reports, forms, related documentation, and materials collected during the intake process are sent to the IA along with a request for a formal investigation.

2.    When alleged misconduct is classified as serious misconduct, including conduct prohibited by law, the supervisor or command officer will immediately contact the IA, which will coordinate the intake for such allegations. The commanding officer of a subject officer will ensure that complaints are processed as required by this policy.

3.    The Deputy Chief, division chief, or commander of the bureau or district will be responsible for monitoring the performance and conduct of employees under his or her command and, if any conduct indicates an emerging pattern of unacceptable behavior, the Deputy Chief, division chief, or commander will initiate actions to correct the behavior, including advising the involved employees that any further allegation of a pattern of unacceptable behavior may be handled as a formal investigation.

h.   Internal Affairs Unit (IA) Authority and Responsibilities:

1.    Officers of the IA act directly pursuant to the command and with the authority of the Chief of Police. They have the authority to require any officer of the department, regardless of rank or appointment, to make a full and complete disclosure pertaining to the commission of, or omission of, any act which might be in conflict with that officer's, or any other officer's departmental duties and obligations. The IA commander may, at their discretion, investigate any complaint lodged against any other officer of the department, regardless of rank or appointment.

2.    Upon receipt of information from an officer or supervisor regarding an allegation of serious or pattern misconduct, the IA will immediately begin a formal investigation into the allegations.

3.    The IA will have the full authority to conduct an investigation without interference from any officer.

4.    The primary duty of the IA will be to ensure the integrity of the department. The IA will direct its efforts toward conducting an efficient, impartial, prompt, and complete investigation of allegations of misconduct by officers of the department.

**O P E R A T I O N S   M A N U A L**
DENVER POLICE DEPARTMENT

5.  The IA is responsible for notifying the Denver District Attorney's Office (DAO) and the City Attorney's Office Prosecution and Code Enforcement Section (PACE) of open investigations and sustained findings that may impact an officer's credibility, as detailed in Section (8).

6.  The IA will maintain files of disciplinary investigations pursuant to the applicable document retention schedule of the department and the city. The files will contain all complaints, final dispositions, supporting documents, and other investigative material pertaining to disciplinary cases.

i.  Monitor's Role in IA Investigations.

The Office of the Independent Monitor will actively monitor and participate in any criminal investigation of the incidents set forth. In addition, IA will investigate any incident set forth below and the monitor's office will actively monitor and participate in such IA investigations:

1.  Any shooting involving a Denver police officer, whether duty related or not;

2.  Any in custody death;

3.  Any duty related incident during which, or as a result of which, anyone dies or suffers serious bodily injury as that term is defined in CRS §18.1.901(3)(p), as it may be amended from time to time;

4.  Any incident whether or not duty related, in which a Denver police officer is under investigation for, or charged by, any jurisdiction with a felony;

5.  Any incident, whether or not duty related, in which a Denver police officer is under investigation for, or charged with, any crime set forth in CRS Title 18, Article 3 (offenses against the person, which includes homicide, assault, kidnapping, and unlawful sexual behavior) as they may be amended from time to time; or

6.  Any incident, whether or not duty related, in which a Denver police officer is under investigation for, or charged by, any jurisdiction with a misdemeanor or local law violation in which a use of force (defined as assaulting, beating, striking, fighting, or inflicting violence on a person) or threatened use of force is an element of the offense.

7.  If no criminal charges are filed subsequent to an investigation or such criminal charges are dismissed, the monitor's office will nevertheless have the discretion to monitor any internal investigation arising from the subject incident.

8.  In addition, the monitor's office will monitor any other internal investigation of possible misconduct by Denver police personnel when requested to do so by the Citizen Oversight Board or Executive Director of Safety. The board or executive director will advise the monitor's office of the reasons why the board or the executive-director believes the monitor's office should monitor the investigation. Within three (3) business days of determining to monitor an investigation or of receiving the request from the board or the executive director, the monitor's office will advise IA only that the monitor's office will monitor the investigation.

9.  The Monitor (or designee) may attend all Internal Affairs officer and witness interviews. The Monitor may suggest questions for the IA interviewers to ask of the witnesses, but the IA interviewer retains the discretion to determine the subject matter and form of the questions to be asked.

10. The monitor will have access to all evidentiary items and stages of the administrative investigation. Where the investigation involves potential criminal charges, the Denver District Attorney's Office may restrict or place conditions on access that they believe would jeopardize the integrity of the investigation or adversely impact any potential criminal prosecution. The monitor will also have complete access to all department documents and electronic files relating to any complaints against, or investigations of,

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

sworn personnel within the monitor's jurisdiction and personnel files, including work history and officer statements but not including documents protected by the attorney client privilege or the attorney work product privilege.

11.   During the course of the investigation, the monitor may discuss the investigation with IA including recommending additional investigation.

12.   For any investigation that it monitors, the monitor will review the investigation to ensure that it is thorough and complete. If the monitor cannot certify that the investigation is thorough and complete, the monitor may request that IA conduct additional investigation. If IA does not complete the additional investigation to the monitor's satisfaction, the monitor may conduct additional investigation, including issuing subpoenas.

13.   The monitor will advise the Citizen Oversight Board, Executive Director of Safety, and Chief of Police of the reasons that the monitor was not satisfied with IA's investigation and of the additional investigation conducted by, or to be conducted by the monitor. The IA will not forward the investigation until the monitor has completed its supplemental investigation, if any, and then the IA will forward its investigation together with the monitor's supplemental investigation to the appropriate person(s).

14.   The monitor will treat all documents and information regarding specific investigations or officers as confidential and will divulge such information on a need to know basis or unless otherwise disclosed by the City and County of Denver.

**(4)   COMPLAINT INTAKE PROCEDURES**

a.   Processing Allegations:

1.   <u>Allegations by members of the public</u>: Any officer who is contacted by a member of the public wishing to complain about possible misconduct by an officer will immediately put the individual in contact with an on-duty supervisor. The supervisor will attempt to make contact with the complainant immediately, but in no case later than the end of his or her shift.

The supervisor will complete a Commendation/Complaint Intake Form as prescribed in this policy.

2.   <u>Allegations by officers</u>: Any officer who has observed or otherwise learned of possible misconduct committed by another officer will report the same directly to a supervisor in the reporting officer's or subject officer's chain of command or to the IA. Any officer who initiates an allegation will prepare an Inter Department Correspondence (DPD 200), outlining the allegations and/or other reports as directed by a supervisor. The reporting officer will not communicate his or her allegation to any other agency, officer, or individual without proper authorization in compliance with all OMS governing the same.

3.   <u>Allegations by government officials</u>: Allegations of misconduct made by government officials (including, but not limited to, law enforcement agencies, judges and prosecutors) will be handled by the IA. The IA will review the allegation and determine whether the case will be handled at the division, bureau, or district level or by the IA.

4.   <u>Allegations by filing of law suits or tort claims</u>: Allegations of misconduct made in the form of tort claims or law suits will be reviewed by the Office of the Independent Monitor and IA to determine whether an IA investigation would be warranted.

5.   <u>Complaints against the Chief of Police</u>: If the Chief of Police has engaged in possible misconduct, the IA will forward a copy of the allegation to the Executive Director of Safety for his or her direction. The Executive Director of Safety (or designee) will confer with the Independent Monitor (and may retain an independent investigator from outside the department) in such circumstances.

b.   Complaint Screening:

**O P E R A T I O N S   M A N U A L**
DENVER POLICE DEPARTMENT

The supervisor or command officer receiving the complaint will make an initial determination whether the complaint describes possible misconduct, the issue amounts to a service complaint, or the complaint is eligible for mediation and/or dismissal based on the criteria set forth below.

1.    If the supervisor concludes that the complaint should be handled as a service complaint or describes possible misconduct, the complaint will be documented on the Commendation/Complaint Intake Form (DPD 687), and forwarded to Internal Affairs. Regardless of who will eventually handle the investigation or complaint resolution, the supervisor or command officer conducting the complaint intake will collect any evidence necessary to ensure that there can be a complete determination of facts in the case.

2.    If the supervisor concludes that the complaint does not state a violation of a law, policy, procedure, rule and regulation, the supervisor may resolve the issue by explaining the law, policies, procedure, rules and regulations to the complainant and indicating that no further investigation will take place. If the complainant is not satisfied with the explanation provided, the supervisor will refer the complainant to the Internal Affairs Unit or the Office of the Independent Monitor.

3.    If the supervisor believes the complaint is eligible for mediation and/or dismissal, the responsible supervisor will be required to initiate and complete, as much as possible, and per policy, the investigation of the complaint regardless of any possible future mediation option. The complaint information will then be forwarded to the Internal Affairs Unit for a final determination.

**(5)     A COMPLAINT MAY BE DISMISSED FOR THE FOLLOWING REASONS:**

a.    <u>Mediation</u>:

Mediation is a voluntary process involving numerous stakeholders, including community members, police officers, police administration and the Independent Monitor. There is no right to mediation. Even if a complaint is eligible for mediation, any stakeholder may decline to allow it to be resolved through the mediation process for any reason.

1.    No stakeholder will be required to state the reason for declining to participate in mediation or agreeing to assign a case for mediation. Statements made during mediation are considered confidential and cannot be used against either party in any future criminal or civil matter.

2.    Furthermore, the decision to mediate a matter or not to mediate a matter cannot be considered during disciplinary proceedings in comparing the discipline issued in previous matters to that issued in a pending matter (i.e., cannot be used for purposes of considering "consistent discipline"). A complaint will be dismissed upon the completion of a mediation session administered by the Monitor's Office.

3.    A complaint may be considered for mediation if it resulted from a failure to communicate or a lack of communication such that the allegation would be resolved better through mediation than through the formal disciplinary process and if it meets any other requirements set forth below. A complaint which, if proven, could constitute a violation of RR-138, Discrimination, Harassment, and Retaliation, may be eligible for mediation only in accordance with **the provisions of the department of Safety EEO Investigation Procedures**.

4.    <u>Complaints ineligible for mediation</u>:

Any allegation of misconduct that falls into one of the following conduct categories as presented in the Discipline Handbook or the listed descriptions is ineligible for mediation:

- <u>Category E</u>: Conduct that involves the serious abuse or misuse of authority, unethical behavior, or an act that results in an actual serious and adverse impact on officer or public safety or to the professionalism of the department.

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

- Category F: Any violation of law, rule or policy which: foreseeably results in death or serious bodily injury; or constitutes a willful and wanton disregard of department values; or involves any act which demonstrates a serious lack of the integrity, ethics or character related to an officer's fitness to hold the position of police officer; or involves egregious misconduct substantially contrary to the standards of conduct reasonably expected of one whose sworn duty is to uphold the law; or involves any conduct which constitutes the failure to adhere to any contractual condition of employment or requirement of certification mandated by law.

- Any allegation of misconduct which, if proven, could constitute a violation of any rule that the Denver Civil Service Commission has designated as making an applicant ineligible to take a promotional examination for, or to be promoted to, the ranks of sergeant, lieutenant, or captain is ineligible for mediation.

5.  Any allegation of misconduct that falls into the following conduct category, as presented in the Discipline Handbook, is eligible for mediation only if the **Executive Director of Safety, the Chief of Police, and the Independent Monitor** all agree that mediation is appropriate.

- Category D: Conduct substantially contrary to the values of the department or that substantially interferes with its mission, operations or professional image, or that involves a demonstrable serious risk to officer or public safety.

6.  Any allegation of misconduct that falls into one of the following conduct categories, as presented in the Discipline Handbook, is eligible for mediation only if the **Internal Affairs Unit and the Independent Monitor** agree that mediation is appropriate.

- Category A: Conduct that has a minimal negative impact on the operations or professional image of the department.

- Category B: Conduct that has more than a minimal negative impact on the operations or professional image of the department; or that negatively impacts relationships with other officers, agencies or the public.

- Category C: Conduct that has a pronounced negative impact on the operations or professional image of the department, or on relationships with other officers, agencies or the public.

7.  Final authority on mediation eligibility:

Even if a complaint is eligible for mediation, the Executive Director of Safety (or designee), the Chief of Police (or designee), or the Monitor (or designee) has the authority to decide for any reason that a case should not be assigned for mediation.

b.  Mediation Procedures:

If the complainant expresses an interest in mediating the complaint, that fact will be documented on the Commendation/Complaint Intake Form which will be forwarded to Internal Affairs for further review. Both the IA commander and the monitor must agree that a complaint is appropriate for mediation for it to be assigned to the mediation program.

1.  The complainant will be advised that the complaint is eligible for mediation, and a determination will be made whether the complainant is still interested in mediation.

2.  If a complaint has been approved for mediation, a notice will be sent in writing by the Office of Independent Monitor to the involved officer(s), with a copy to their commanding officer, which will include:

- The complaint number

- The name of the complainant(s)

- The nature of the allegations

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

- An explanation of the mediation program
- An advisement to the officer(s) of the IA and Monitor's conclusion that the case is appropriate for mediation
- A request from the Monitor that the involved officer(s) contact the Monitor's office within the next five (5) working days of receipt of the notice
- An explanation that participation in the mediation program is voluntary and that upon completion of the mediation, the complaint will be dismissed. A failure to respond to the request will be construed to mean the officer has declined the opportunity to mediate the complaint.

3. The involved officer's supervisors will ensure that the IA mediation notice is delivered to the involved officer(s) as soon as possible.

4. If any of the involved officers decline to participate in mediation, the complaint will be returned to the intake process in accordance with normal IA policies and procedures.

5. If a complainant fails to appear for a scheduled mediation, without good cause as determined by the Chief of Police or his designee, the involved officer(s) will be provided with the choice of either rescheduling the mediation or having the case dismissed by IA.

6. If any of the involved officers fail to appear for a previously scheduled mediation, without good cause, the monitor will notify IA so that appropriate action can be taken. The complaint may then be processed by IA as per normal policies and procedures.

7. Upon completion of the mediation, the complaint will be dismissed. No new complaint will be accepted based on the conduct of an officer during mediation. The mediation session will be confidential (with statutory exceptions) as per CRS §13-22-307 and the Colorado Council of Mediators Revised Code of Professional Conduct, Section V and there will be no requirement that an agreement be reached during the course of mediation.

c.   Judicial or Administrative Review:

The complainant could reasonably be expected to use, or is using, another remedy or channel for the grievance stated in the complaint. Complaints that are subject to judicial, administrative, or other review which will explicitly or implicitly require a finding or ruling on the conduct that is the subject of the complaint may be dismissed. A complaint should be dismissed on this basis only if the alternative channel is reasonably accessible to the complainant and can provide an adequate remedy.

d.   Untimely:

The complainant delayed too long in filing the complaint to justify present examination. IA may waive the timeliness requirement for good cause.

1. Except for good cause, complaints of minor misconduct involving courtesy, communications, and minor rules violations should be filed within sixty (60) days of the incident.

2. Except for good cause, complaints of serious misconduct including, inappropriate force, egregious acts of disparate treatment, or major rules violations should be filed within six (6) months of the incident. IA may waive the time limit if there is substantial corroborating evidence of the misconduct.

3. There is no specific deadline for complaints alleging criminal conduct or corruption. Such complaints will be evaluated on their merits with due consideration for the quantity and quality of available evidence.

e.   No Misconduct:

Even if all aspects of the complaint were true, no act of misconduct would have occurred. An allegation that fails to describe at least a potential violation of federal, state, or municipal law, or

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

city or department policy will be dismissed. Occasionally, a complaint that fails to state misconduct may merit a referral to the Chief's Office for policy or other considerations or to mediation as a means of improving police community relations. A complaint may be dismissed if it is apparent that no misconduct was committed and if it is likely that additional investigation would not reach a different conclusion.

f.   False or Trivial:

The complaint is trivial, frivolous, false, or not credible.

1.   Allegations determined to be intentionally and materially false will be dismissed.

2.   Trivial or frivolous complaints may be dismissed. Trivial or frivolous complaints allege minor technical violations of procedural rules which have negligible adverse effects on the public or the credibility of the department.

3.   Complaints that are grossly illogical or improbable may be dismissed during intake by IA or recommended for dismissal by division, bureau, or district supervisors, per the procedure outlined in OMS 503.01(4)(b). However, care and compassion must be exercised to ensure that a full, fair and complete investigation is made of complaints made by those who may be suffering from a mental illness.

g.   Third Party Complaints:

A complainant must generally have a reasonably direct relationship to the incident in order to file a minor complaint. Complainants are considered to have a direct relationship if they were directly affected by the alleged misconduct (firsthand sources), witnessed the alleged misconduct (secondhand sources), or have special, professional, or organizational knowledge about the alleged misconduct (e.g., a lawyer, judge, etc.)

1.   Third hand or anonymous complaints that allege corruption or other very serious police misconduct will not be dismissed.

2.   Dismissal is not allowed for third party complaints of less serious misconduct if there is a reasonable explanation why a person with standing has not filed a complaint (e.g. the person who was directly affected is a minor child; is elderly, disabled, or deceased; cannot communicate easily in English, is not a citizen; is wanted on criminal charges; or has been threatened, etc.).

3.   Anonymous complaints of minor misconduct may be dismissed. However, supervisors will urge the complaining party to encourage a person with standing to file the complaint.

h.   Complaints about Repeatedly Reviewed Categories of Police Activity:

IA may receive allegations about some categories of police action (e.g., police procedures related to photo radar operations) that in the past have been repeatedly reviewed, preliminarily investigated, and subsequently dismissed by IA. The discretion to summarily resolve a category of complaints should be exercised carefully with due regard to the nature and seriousness of the complaints.

i.   History of Unfounded Complaints:

Occasionally, a single individual repeatedly files non meritorious, unfounded, or duplicative complaints, diverting time, attention and resources from other complaints. The IA Commander may authorize in writing that repeated complaints from specifically named individuals receive special handling. District and bureau supervisors may also recommend dismissal and/or special handling for repeated complaints from specifically named individuals.

Special handling may mean that designated persons are required to file their complaints in writing or that they not be interviewed as part of the intake investigation. This procedure may be used if IA can demonstrate that a person:

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

    1.    Has a history of filing unverifIAle or non-credible complaints and was warned in writing that the filing of similar complaints in the future may result in special handling, rapid disposition, or other specified actions, or;

    2.    Previously filed a demonstrably false complaint. The discretion to specially handle complaints from named individuals must be exercised with great care and only with a supporting record.

j.    <u>Complainant Withdraws</u>:

The complainant withdraws the complaint or fails to complete the necessary complaint steps. The complaint may be dismissed if the complainant requests that it be withdrawn or explicitly agrees that his or her concern has been resolved and that no further action need be taken on the complaint. The complaint may also be dismissed if the complainant cannot be located, does not respond to requests for information, or fails to complete other necessary steps in the complaint process. Whether dismissed during the intake process or during post intake screening, the file needs to demonstrate a good faith effort to communicate with the complainant. The complainant's request to withdraw a complaint or failure to cooperate in an investigation does not require that IA dismiss a complaint.

k.    <u>Unable to Identify Officer</u>:

    1.    The identity of the officer cannot be determined. In some cases, there is no reasonable means of identifying the employee who is alleged to have committed misconduct. Depending on the nature of the complaint, dismissal may be prudent and proper to conserve limited public resources.

    2.    The complaint may be dismissed if, after a good faith effort, the involved employee cannot be identified, and it would be unlikely that the employee would be identified. IA may forward the complaint to an appropriate district or bureau commander for information and educational purposes.

l.    <u>No Jurisdiction</u>:

DPD lacks jurisdiction. The authority to dismiss for lack of jurisdiction is inherent in the limited sovereignty of the City and County of Denver. IA will dismiss complaints over which it has no jurisdiction, including complaints against persons who were not employed or supervised by DPD at the time the alleged misconduct was committed. If possible, IA will refer the complainant to the proper department, agency or government entity. Complaints brought against career service employees may be taken by IA or at any district or bureau and will be forwarded to IA. Complaints against career service employees are generally forwarded to and resolved by Safety Human Resources Division.

The DPD lacks jurisdiction to discipline persons it no longer employs. As such, a complaint may be dismissed if the employee resigns, retires or will no longer be employed by the department by the time the investigation and discipline process can be completed. However, in cases of serious misconduct by former employees, the IA commander may:

    1.    Conduct an investigation and refer it to the Denver District Attorney's Office and/or place the findings in the employee's IA or personnel file, or

    2.    Review the actions of the employee's supervisors, or

    3.    Review the department's policies and training curriculum, or

    4.    Elect not to dismiss the complaint until after an investigation has been completed if it appears that the employee may be rehired by the department or by another law enforcement agency, or

    5.    Elect to close the complaint with a notice to the employee's file that, should the employee return to the department at a later date, the case will be reopened and investigated.

**(6)**    **CONDUCTING INFORMAL INVESTIGATIONS:**

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

A complaint which alleges minor misconduct may be handled in an expedited manner. Informal Investigations should be completed within twenty-one (21) days from the time the complaint is received by the district/bureau. Exceptions may occur when the involved employees are unavailable due to time off, vacation, illness, or other emergencies.

a.    Supervisors will complete the following steps when handling a minor misconduct complaint:

   1.    Discuss the incident and the nature of the complaint with the involved officer(s) as well as the department's expectations with respect to rules and procedures pertaining to the issues in the complaint, the complainant's perception of the officer's behavior, and alternative approaches the officer could have possibly used to improve service.

   2.    Document the incident and actions taken on the Commendation/Complaint Intake Form (DPD 687).

   3.    If the investigation can be completed during the current tour of duty, all documentation will be forwarded to IA where upon receipt a case number will be assigned.

   4.    If the investigation cannot be completed during the current tour of duty, the supervisor will contact IA for a case number, and forward all documentation to IA upon completion of the investigation.

b.    IA will review the documentation and determine if the actions taken by the investigating supervisor were sufficient to address the officer's alleged misconduct.

   1.    If IA determines that the complaint is eligible for dismissal based on the criteria outlined in OMS 503.01(4)b, the complaint will be forwarded to the Chief of Police or his designee for final disposition.

   2.    If IA determines that the action taken by the investigating supervisor/command officer sufficiently addressed the complaint, IA will advise the officer's chain of command that no further action is required.

   3.    If IA determines that the actions taken by the investigating supervisor/command officer did not sufficiently address the complaint:

      •    The informal complaint may be sent back to the concerned officer's commanding officer for further follow-up as prescribed by IA. An additional twenty-one (21) day deadline is granted, with exceptions as noted in OMS 503.01 (6) a. above, or

      •    The complaint can be reclassified as a formal investigation to be investigated by IA.

**(7)    CONDUCTING FORMAL INVESTIGATIONS:**

Allegations of general, pattern, or serious misconduct (including conduct prohibited by law) will result in a formal investigation.

a.    If the complaint intake performed by the supervisor of a bureau or district indicates that a formal investigation is warranted, the supervisor will notify the IA, which will assign an IA case number regardless of whether IA or the district/bureau conducts the investigation.

b.    The supervisor or command officer of a bureau or district handling a general misconduct allegation will contact the IA for a case number. The supervisor or command officer of the bureau or district will prepare or cause to have prepared the Statement Form (DPD 366), and Commendation/Complaint Intake Form (DPD 687). The statement should address all allegations and complaints. Should clarification be necessary, questions and answers should supplement the statement. When a complaint is taken by telephone, the supervisor taking the complaint will complete the Commendation/Complaint Intake form and write a narrative summary of the complaint on a Statement Form. The IA investigating officer assigned to the case (if the IA is investigating the matter) should use these same forms.

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

c.  Depending on the severity of a misconduct allegation, at the commencement of a formal investigation the IA commander will confer with the appropriate division chief in order to determine whether:

1.  The subject officer should be allowed to remain in his or her usual assignment;

2.  The subject officer should be allowed to remain on duty but in another assignment; or

3.  The subject officer should be relieved of duty.

d.  The IA will immediately be notified when a subject officer is allowed to remain on duty but in another assignment or is relieved of duty.

e.  If an officer is charged with a felony, the Chief of Police will indefinitely suspend the officer pursuant to Denver City Charter Section 42-27.

f.  An Officer Notice of Investigation (NOI) (DPD 627) will be generated and provided to an officer who is the subject of a formal investigation when that investigation is commenced unless such notification may jeopardize the ongoing investigation.

The NOI will outline the general nature of the formal investigation and include a summary of the allegations. The NOI will be generated by the IA. If the nature of the investigation requires a credibility disclosure to prosecutors, as described in Section (8) below, a Credibility Disclosure – Officer Notification (DPD 627A) will be provided to the subject officer with the NOI.

g.  When directed by an investigating officer, every officer who has knowledge, whether direct or indirect, of the alleged misconduct will prepare and submit an individual, written statement before the end of the shift when they are directed to provide the report. Reports should be supplemented by questions and answers if necessary for clarification.

The statement form is to be provided to the supervisor or command officer conducting the investigation. A copy of the written statement will be sent to the commander of the reporting officer. The written statement must be accurate and complete.

h.  Prior to making any statement or answering any questions as a part of an informal or formal investigation, the subject or witness officer will be provided a copy of the Advisement Pursuant to Internal Investigation (DPD 455), (also known as the Garrity Advisement) by the supervisor, command officer, or IA investigating officer conducting the investigation.

The officer will be provided a reasonable amount of time to review DPD 455 and to sign it. If the officer declines to sign DPD 455, the investigating officer will write "declined" in the officer's signature space. Although an officer may refuse to sign DPD 455 in a disciplinary investigation, the officer must still give a statement. An officer's refusal to give a statement may result in disciplinary action in accordance with the DPD Disciplinary Handbook.

i.  Statements will be taken from witnesses and complainants whenever possible and should be supplemented by questions and answers if necessary for purposes of clarification.

j.  If a formal investigation concerns an allegation of a law violation, the Miranda Advisement form (DPD 369) will be given to the subject officer in lieu of the Advisement Pursuant to Internal Investigation (DPD 455), before questioning. The statement should be supplemented by questions and answers if necessary for purposes of clarification.

k.  The administrative investigation of any incident requiring mandatory monitoring will be completed within sixty (60) calendar days of its initiation. For all other investigations under the jurisdiction of the monitor, the sixty (60) day time limit will not apply unless the Executive Director of Safety directs that the investigation and/or any related disciplinary actions are subject to the time limits set forth in this policy or to other time limits set by the Executive Director. Failure to comply with any time limits set forth in this policy will not serve as a basis for sworn personnel to challenge the jurisdiction of any entity referenced in this policy, nor will such failure serve as a basis to challenge any administrative action, including discipline, which may be taken against such sworn personnel, nor will it constitute misconduct by any member of the department.

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

l.    If IA is not able to complete within sixty (60) calendar days any investigation of any incident requiring mandatory monitoring or the time limits set by the Executive Director of Safety, the commander of IA may request in writing through the chain of command that the Chief of Police grant a specified, reasonable amount of time in which to complete the investigation. IA's request must identify the specific reasons that it has not been able to complete the investigation within sixty (60) calendar days and must explain why it believes the investigation can be completed within the requested extension of time. Requests for extensions and responses thereto will be copied to the Independent Monitor, Citizen Oversight Board, and the Executive Director of Safety.

m.    At completion of the investigation, IA will have the case reviewed by the Independent Monitor and perform any reasonable and necessary additional investigation as requested by the Monitor. Once the Independent Monitor has certified the investigation as complete, it will be forwarded to the Conduct Review Bureau for the purpose of making determinations regarding each specification, and penalty recommendations when applicable.

n.    Scheduled discipline cases may be forwarded directly to the Conduct Review Bureau upon completion by the subject officer's commanding officer without first being reviewed by the Independent Monitor.

**(8)**    **CREDIBILITY DISCLOSURE NOTIFICATIONS ("*BRADY* NOTIFICATIONS")**

a.    The department is required under federal and state case law, as well as Colorado statutory law, to disclose to the District Attorney's Office (DAO) and the City Attorney's Office Prosecution and Code Enforcement Section (PACE) information in the department's possession that may affect an officer's credibility in court. This is commonly referred to as a "*Brady* notification."

b.    The IA shall notify the DAO and PACE when an officer is under investigation for conduct that includes any of the following allegations:

    1.    Knowingly making an untruthful statement concerning a material fact, knowingly omitting a material fact in an official criminal justice record, or knowingly omitting a material fact while testifying under oath or during an internal affairs investigation or administrative investigation and disciplinary process;

    2.    Demonstrating a bias based on race, religion, ethnicity, gender, sexual orientation, age, disability, national origin, or any other protected class;

    3.    Tampering with or fabricating evidence;

    4.    Being convicted of any crime involving dishonesty or being charged in a criminal proceeding with any felony or any crime involving dishonesty;

    5.    Violating any policy of the department regarding dishonesty; or

    6.    Conduct prohibited by law.

c.    The IA shall confer with the DAO and PACE to determine the Rules & Regulations, as specified in the Disciplinary Handbook, that meet the above-listed conduct and require a credibility disclosure notification to the prosecuting agencies.

d.    When an investigation is opened that includes a specification requiring a credibility disclosure notification, or if such a specification is subsequently added, the IA shall promptly notify the DAO and PACE of the investigation, including the IA case number and the specification(s) triggering the notification. The subject officer shall also be notified of the credibility disclosure using a Credibility Disclosure - Officer Notification (DPD 627A), which shall be included with the Notice of Investigation (DPD 627) sent to the subject officer, unless a NOI is not provided due to jeopardizing an ongoing investigation, as detailed in OMS 503.01(7)(f).

e.    At the completion of the investigation, the IA shall notify the DAO and PACE of the findings (i.e., sustained, not sustained, exonerated, or unfounded) on the specification(s) that are the subject of the credibility disclosure notification. However, the decision whether to add or remove an officer

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

from the list of *Brady* notifications in criminal and municipal court cases lies solely with the respective prosecuting agency, not with the department.

**(9)    CONDUCT REVIEW BUREAU:**

a.    Using procedures and protocols outlined in the Discipline Handbook, the Conduct Review Bureau (CRB) will review the facts gathered during the formal investigation and make a determination for each listed specification.

b.    Each specification listed for consideration will then be categorized according to one of the following findings:

   1.    Unfounded – The investigation indicates that the subject officer's alleged actions relating to the department policy, procedure, rule, regulation, or directive in question did not occur.

   2.    Exonerated – The investigation indicates that the alleged actions of the subject officer were within the policies, procedures, rules, regulations, and directives of the department.

   3.    Not Sustained – There was insufficient evidence to either prove or disprove the allegation.

   4.    Sustained – After consideration of all evidence in the investigation, the subject officer's actions were found, under the specified standard of proof, to have been in violation of the department policy, procedure, rule, regulation, or directive in question.

c.    Scheduled discipline cases

   1.    If a case is sustained and the penalty recommendation is other than an oral or written reprimand, the case will be forwarded to the Executive Director of Safety for imposition of discipline.

   2.    If a case is sustained and the penalty recommendation includes fined time or a suspension, the subject officer and his or her commanding officer are notified by CRB as to the disposition.

   3.    If a subject officer disagrees with the findings and/or recommendation of fined time or suspension, they may request a **Chief's Pre-Disciplinary Hearing**. The CRB will then schedule the **IRP process** as outlined in OMS 503.01(11). If the case is not sustained, the subject officer is notified by CRB of its disposition, and it is forwarded to IA for tracking and filing.

d.    Non-scheduled discipline cases - Independent Monitor

   The Independent Monitor will review draft findings and penalty recommendations of the CRB and note any concerns.

e.    Non-scheduled discipline cases - oral or written reprimand

   If a case is sustained and the penalty recommendation is an oral or written reprimand, the Office of the Independent Monitor defers and the case does not include any of the specifications listed in OMS 503.01(9) h., the case will not be reviewed in the Chief's Conduct Review Meeting and the procedure outlined in OMS 503.01(9) i. will be followed.

f.    Non-scheduled discipline cases – fined time or suspension

   If a case is sustained and the penalty recommendation includes fined time, suspension, or termination, the CRB will coordinate a contemplation of discipline meeting where the CRB will notify the subject officer and his or her commanding officer as to the recommendation in the case.

   1.    The CRB will coordinate the timing and location of the contemplation of discipline meeting, which will occur no sooner than the first business day following the Chief of Police Conduct Review meeting. If it is determined there are circumstances necessitating a more urgent notification of recommendation(s), the Commander of CRB (or designee) retains authority to modify this time schedule.

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

    2.    The subject officer will be served with a **Contemplation of Discipline letter** that outlines the complaint specifications; and if sustained, the recommended discipline. Officers being served with a **Contemplation of Discipline letter** are allowed 24 hours to make a decision to accept the discipline or request a chief's hearing. If the officer chooses to use the 24-hour decision period, he/she will receive an order specifying the date and time to return to the CRB. At that time the officer must report his or her decision, in person, to the CRB.

    3.    If the subject officer disagrees with the findings and/or recommendation of fined time or suspension, they may request a Chief's Pre-Disciplinary Hearing. The CRB will then schedule the Investigative Review Process as outlined in OMS 503.01(10).

    4.    If the case resulted in no sustained specifications, or the penalty recommendation is an oral or written reprimand and included at least one of the specifications listed in OMS 503.01 (9) h., the case will be reviewed in the Chief's Conduct Review Meeting.

g.    Chief's Conduct Review Meeting – sustained specification(s)

All cases with at least one sustained specification where the penalty recommendation includes fined time, suspension, or termination will be reviewed in the Chief's Conduct Review Meeting, which will include, the Chief of Police, Deputy Chief, the subject officer's commanding officer, the Deputy Director of Safety, the Conduct Review Bureau Commander, and/or any others as determined by the Chief of Police. The purpose of the meeting is to gain input on the final finding(s) and penalty assessment. No officer, including command officers, will discuss the outcome of the Chief's Conduct Review Meeting with anyone that was not a part of the meeting until after the Contemplation of Discipline has been served.

h.    Chief's Conduct Review Meeting – designated specification(s)

All cases involving an allegation of one of the following specifications will be reviewed in a Chief's Conduct Review Meeting, regardless of the finding(s), to ensure that the determination is appropriate and to keep the Chief of Police and Executive Director of Safety informed as to the resolution of these cases:

    1.    RR-112.1 Misleading or Inaccurate Statements;

    2.    RR-112.2 Commission of a Deceptive Act;

    3.    RR-115 & 115.2 Conduct Prohibited by Law;

    4.    RR-138 Discrimination, Harassment, and Retaliation;

    5.    RR-306 Inappropriate Force (where the force recipient was hospitalized as a result of the force used or alleged force used)

    6.    Any other case deemed appropriate by the Chief of Police

i.    When discipline is an oral or written reprimand, it will be issued to the officer by their commanding officer. The command officer will have a printout of the evaluation system journal entry for the reprimand forwarded to the IA.

**(10)**    RESOLUTION OF SUSTAINED SPECIFICATIONS WITH A RECOMMENDATION OF LOSS OF TIME:

a.    An **IRP (investigative review process)** will be commenced, and a Chief's Pre-Disciplinary Hearing held when directed by the Chief of Police or requested by the subject officer.

b.    The subject officer may elect to accept the penalty recommendation made by the Chief of Police and voluntarily waive any further disciplinary proceedings, pending approval by the Executive Director of Safety

c.    Either before or after the IRP, if the subject officer chooses to accept that penalty, they may write a letter to the Chief of Police through the commander of the CRB outlining mitigating or exonerating circumstances.

**(11)**    INVESTIGATIVE REVIEW PROCESS (IRP):

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

a.   **Phase I**:

Upon receipt of a sustained case the CRB will notify the subject officer of its completion and that the investigative report and recommendations are available for review.

1.   If the subject officer is on vacation, accrued sick leave, or other approved leave, the five-day (5) period will begin upon the subject officer's return to active duty unless otherwise ordered by the Chief of Police.

2.   If the subject officer is serving a suspension, the IRP process will begin when the officer returns to active duty or at the direction of the Chief of Police.

3.   The review period may be extended at the discretion of the CRB commander. Subject officers may select one (1) member of the classified service, or a Denver Police Protective Association or Fraternal Order of Police representative, or an attorney to represent them during the IRP process. No officer will serve as a representative if they have been identified as a witness or as another subject officer in the same IA case being reviewed, or if they are in the subject officer's chain of command.

Unless there are extenuating circumstances, as determined by the commander of the CRB, the same officer will represent the subject officer during the IRP process.

4.   Prior to commencement of the IRP, all persons who will review the investigative file will sign the Confidentiality Declaration (DPD 628a). Failure to sign the confidentiality declaration will preclude review of any files.

5.   A subject officer and his or her representative will be allowed to review the entire investigative file regarding the subject officer's sustained violations.

6.   A subject officer will not remove any documents, electronic or hardcopy from the IA or CRB offices at any time during his or her review. A subject officer will not be allowed to copy any portion of the investigative file. A subject officer may, however, make and retain notes regarding the review. A copy of those notes will be retained with the IA case file.

7.   Officers are prohibited from retaliating in any manner against any officer, other employee, or person who has made a charge, testified, assisted, or participated in any manner in an investigation, IRP, Chief's Pre-Disciplinary hearing or Civil Service hearing.

b.   **Phase II**:

The second phase of the IRP consists of a meeting between the subject officer, one (1) officer representative, the investigating officer, and the IA commander (or designee). Phase II will be conducted within five (5) business days of the completion of Phase I of the IRP. The focus of the IRP is to attempt to reach agreement on the material facts of the case. Subjective, disputed facts such as the intent or opinions of the subject officer, complainants, and witnesses will not be addressed at the IRP.

1.   Disputed factual issues will be discussed during Phase II of the IRP in an attempt to reach an agreement or understanding as to the content of the report. If the parties are not able to agree on all of the facts, the subject officer may within seven (7) calendar days of the Phase II IRP meeting, submit a memorandum of dispute not to exceed ten (10) pages, to be included with the investigative file. The content of the memorandum of dispute will be limited to specific factual issues mentioned in the IA report.

2.   During Phase II of the IRP, the subject officer may petition, in writing, the IA commander to conduct further investigation into the case. The subject officer must articulate specific reasons why they believe further investigation is needed. The IA and CRB commanders will confer and make the final decision as to whether further investigation is necessary. If it is determined that further investigation is needed, the original investigation will be reopened and further investigation conducted at the IA commander's direction.

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

3.    At the completion of the supplemental investigation, IA will make the case available to the OIM for review.

4.    Once the Monitor has reviewed the supplemental investigation, it will be forwarded to the Conduct Review Bureau for the purpose of making determinations regarding each specification, and if applicable to make penalty recommendations per the procedure outlined in OMS 503.01(9). The commander of CRB may set aside any previously sustained specification or adjust any of his or her original penalty recommendations at his or her discretion.

5.    The subject officer will be provided an opportunity to review the supplemental report, which will be included in the original investigative report after the case is returned to the CRB commander.

6.    In cases involving multiple subject officers, there will be a separate IRP for each subject officer unless a joint IRP is agreed to by the CRB commander and each subject officer.

**(12)**   **CHIEF'S PRE-DISCIPLINARY HEARING:**

a.    A **Chief's Pre-Disciplinary Hearing** will be conducted by the Chief of Police (or designee).

1.    For each matter for which a Pre-Disciplinary Hearing will be held, a Contemplation of Discipline Letter will be prepared and provided to the subject officer within ten (10) business days of the CRB's recommendations.

2.    For each investigation that it monitors, the Independent Monitor may review the case file and discuss it with the Chief of Police and/or the Executive Director of Safety (or designee) prior to its being sent to the subject officer.

3.    A Pre-Disciplinary Hearing will be held no less than seven (7) and no more than ten (10) business days after the issuance of the Contemplation of Discipline Letter, unless extended by the commander of CRB. The Independent Monitor, Executive Director of Safety, and Denver City Attorney, (or their designees), may attend the Pre-Disciplinary Hearing (aka, Chief's hearing). Other individuals may attend the Pre-Disciplinary Hearing with the approval of the Chief of Police (or designee).

b.    Prior to the Chief of Police making a recommendation as to whether any rule violations should be sustained and the level of discipline, if any, to be imposed upon an officer, the Chief of Police will confer with the Independent Monitor.

c.    After holding a Pre-Disciplinary Hearing the Chief of Police (or designee) may initiate disciplinary action with a Written Command specifying disciplinary action. The Written Command will be submitted, pursuant to Denver City Charter section **9.4.14 (A)**, to the Executive Director of Safety for approval.

d.    Within five (5) business days of the Police Chief's recommendation of discipline, the Monitor will advise the Executive Director of Safety whether they agree with the Police Chief's recommendation, as to whether any rule violation should be sustained, and the level of discipline, if any. If the Monitor disagrees with the Police Chief's recommendation, the Monitor will state specific reasons for disagreeing with the recommendation.

e.    In accordance with Denver Charter section **9.4.14 (B)**, within 15 calendar days of the date of the Chief's order, the Executive Director of Safety (or in their absence the Deputy Executive Director of Safety) will approve, modify, or disapprove the Written Order of disciplinary action **and will issue a Written Departmental Order** which will take effect immediately. As to each specification, the Executive Director of Safety will have the option of accepting the penalty recommendation of the Chief of Police or increasing or decreasing the recommended penalty. Nothing in these provisions prohibits the Executive Director of Safety (or designee) from reviewing the investigatory file prior to receiving the Written Command. The Executive Director (or designee) has the discretion of engaging in settlement discussions with the subject officer or their

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

representative, at any stage of the disciplinary process. Such settlement discussions, should they occur, will not be admissible at any future hearing(s) before the Civil Service Commission.

1.      Prior to imposing discipline, if any, the Executive Director of Safety will confer with the Independent Monitor regarding the monitor's disciplinary recommendation and the monitor's evaluation of the investigation.

2.      The Independent Monitor will be allowed to review, but will not become the custodian of, the Executive Director of Safety's disciplinary order.

**(13)    COMPLAINANT LETTER:**

At the conclusion of the review and recommendations, a letter will be prepared by CRB notifying the complainant of the outcome of the investigation.

a.      Should the disposition change at any further level of review, CRB will modify the notification letter to reflect the new disposition.

b.      The completed letter will be forwarded to the Office of the Independent Monitor (OIM). OIM will ensure that the letter is sent to the complainant.

c.      The letter will include the complaint number, the date of the incident, the date the complaint was made, and the findings. The letter will include the name and phone number of the responsible person who can be contacted for further information.

**(14)    APPEALS PROCESS:**

If a subject officer does not agree with a departmental order of discipline (other than a reprimand) issued by the Executive Director of Safety, the subject officer may appeal such discipline to the Denver Civil Service Commission pursuant to the Denver City Charter and Civil Service Rules then in effect. (See Denver City Charter section **9.4.15** regarding Civil Service disciplinary review procedures.

**(15)    DUTY TIME AND OVERTIME COMPENSATION:**

a.      All officers who participate in a Chief's Pre-Disciplinary hearing or who serve as the subject officer's representative at a Chief's Pre-Disciplinary hearing will have that time counted as duty time.

b.      Officers up to and including the rank of captain who participate in a Chief's Pre-Disciplinary hearing or who serve as a subject officer's representative at a Chief's Pre-Disciplinary hearing and who are off duty will be paid overtime in accordance with the provisions of the collective bargaining agreement then in effect.

**(16)    INTERNAL PERSONNEL MATTERS:**

IA investigations are internal personnel matters and, as such, all investigative reports, command officer's conclusions, and recommendations will be secured in a manner that prevents unauthorized review and disclosure of findings.

**(17)    EXECUTIVE ORDER 94 POLICIES FOR ALCOHOL AND DRUG TESTING:**

a.      Training on Executive Order 94

1.      All new supervisors and command officers should be trained on Executive Order 94 and Memorandum A during the first six months following their promotion. This training, at a minimum, should include the study of Executive Order 94 and Memorandum A, instruction on the recognition of drug and alcohol impairment and use, the proper documentation of the supervisor's reasonable suspicion, and the supervisor's responsibility for escorting employees to the testing sites and through the testing process. Additionally, a copy of Executive Order 94 and Memorandum A should be given to each supervisor and command officer with each supervisor and command officer acknowledging, in writing, receipt of the policy and the training.

2.      All employees without supervisory or command officer duties should be trained on Executive Order 94 and Memorandum A during their first year of employment. Training,

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

at a minimum, should include the study of Executive Order 94 and Memorandum A, and instruction on the recognition of drug and alcohol impairment and use. Additionally, a copy of Executive Order 94 and Memorandum A should be given to each employee with each employee acknowledging, in writing, receipt of the policy and the training.

b.    **Prohibitions for all city employees including classified members of the police and fire departments - Alcohol**

1.    **Employees are prohibited** from consuming, being under the influence of, or impaired by alcohol while performing city business, while driving a city vehicle or while on city property. There are three exceptions to this prohibition.

- An employee is not on duty and attending an officially sanctioned private function, e.g., an invitation only library reception.

- An employee is not on duty and at a city location as a customer, e.g., playing golf on a city course.

- An employee is a member of the police department and as a part of the employee's official duties consumes alcohol in accordance with police department procedures as described in OMS 304.10.

2.    **As part of official duties**, members of the police department according to established department procedures may consume alcohol. However, it is grounds for discipline, up to including immediate dismissal, if members of the police department consume alcohol in violation of their department procedures.

3.    **The alcohol levels** defined by the state legislature that may be amended from time to time for defining "under the influence of alcohol" and "impaired by alcohol" are adopted here for purposes of this operations manual.

a.    These current alcohol level definitions are contained in the Addendum to Executive Order 94. If there is a conflict between the state legislature and the DOT regulation, alcohol level definitions and the ones contained in the Addendum to Executive Order 94, the state legislature and DOT regulation definitions will take precedence.

b.    Employees holding Commercial Driver's licenses (CDL) are also subject to the alcohol levels defined by the department of Transportation (DOT) regulations that may be amended from time to time for "under the influence" which are adopted here for purposes of Executive Order 94.

c.    **Prohibitions for all city employees including classified members of the police and fire departments - Illegal and Legal Drugs**

1.    Employees are prohibited from consuming, being under the influence of, or impaired by illegal drugs while performing city business, while driving a city vehicle or while on city property.

2.    Employees are also prohibited from selling, purchasing, transferring, or possessing an illegal drug.

There is one exception to this rule. As a part of official duties, illegal drugs may be handled, controlled, and disposed of according to established department contraband procedures by employees. However, it is grounds for discipline, up to and including immediate dismissal if employees sell, purchase, transfer or possess illegal drugs at any time other than as a part of their official duties.

3.    Legal drugs – Notification of Supervisor

It is the responsibility of the employees who work in positions operating vehicles or dangerous equipment or positions affecting the health or safety of co-workers or the

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

**503.00  PERFORMANCE**                                                                 PAGE: 22 OF 39

public to advise their supervisors that they are taking prescription medication that may affect their performance.

4.    Legal drugs - Prohibitions

Employees who work in positions operating vehicles or dangerous equipment or positions affecting the health or safety of co-workers or the public are prohibited from consuming, being under the influence of, or impaired by legally obtained prescription drugs while performing city business, unless the following two determinations have been made:

a.    It is determined by both the employee's supervisor and either the employee's Human Resource Specialist or Safety Officer, after consulting with the Occupational Health and Safety Clinic (OHSC) personnel, that the employee's job performance will not be affected, and that the employee does not pose a threat to their own safety.

b.    It is determined by both the employee's supervisor and either the employee's Human Resource Specialist or Safety Officer after consulting with the OHSC personnel that the employee will not pose a threat to the safety of co-workers or the public, and the employee will not disrupt the efficient operation of the agency.

- If appropriate, the OHSC personnel may contact the employee's personal physician. Prior to making contact with the employee's personal physician, the OHSC personnel should obtain a medical release from the employee.

- The OHSC will keep the medical records that disclose the identity of the legal drug confidential in accordance with state and federal laws.

- Employees may be required to use sick leave, take a leave of absence or comply with other appropriate non-disciplinary actions determined by the appointing authority until the above determinations can be made.

5.    The DOT regulations prohibit employees with CDLs from using marijuana, even for approved medical reasons. If the federal and Colorado laws are in conflict on this issue, the federal law will take precedence. Therefore, a positive marijuana drug test will be treated as an illegal drug use for all employees, including those with CDLs, subjecting them to all rules contained herein for illegal drug use even if a physician has recommended the marijuana for medical reasons.

d.    **Drug and alcohol testing - Pre-Employment**

1.    The Civil Service Commission or interviewing agency will perform pre-employment drug screening of all applicants in accordance with their policies and procedures.

2.    Employees who will be filling jobs defined as safety-sensitive or requiring a CDL, prior to the first time the employee performs a safety-sensitive function, will be tested for controlled substances and may be tested for alcohol.

3.    Refusal by an applicant to submit to a pre-employment test will result in denial of employment.

e.    **Drug and alcohol testing - Reasonable Suspicion Testing**

When a supervisor or command officer has reasonable suspicion that any employee is consuming, under the influence of, or impaired by alcohol or illegal drugs after taking appropriate safety measures, i.e., removing the employee from any situation which may pose a safety risk to the employee, co-workers or the public, the supervisor or command officer will immediately consult with the Internal Affairs on-duty/on-call command officer to determine further actions. However, if immediate consultation is not possible, it is the responsibility of the supervisor or command officer to promptly initiate alcohol and/or drug testing. The supervisor or command officer will initiate testing as follows:

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

**503.00   PERFORMANCE**

   1.    Alcohol

       a.    Document in writing on Drug and Alcohol Testing (DPD 667), the specific reasons for the decision to initiate testing based on specific, contemporaneous, articulable observations of the employee's appearance, behavior, and speech or body odors.

       b.    When possible, have a second supervisor or command officer, confirm the specific contemporaneous, articulable observations of the employee's appearance, behavior, speech, or body odors.

       c.    Advise the employee that the supervisor or command officer is ordering the employee to go to the testing site for testing.

       d.    Escort the employee to the testing site as soon as possible. However, if the supervisor or command officer is unable to escort the employee, the supervisor or command officer should have another individual escort the employee for testing. The individual selected to escort the employee will be of a higher grade/rank than the employee being tested.

       e.    Require the employee to bring a picture identification card and proof of the employee's Social Security or employee/badge number to the testing site.

       f.    If the employee refuses to go to the testing site, or refuses to participate in the testing process, the supervisor or command officer should tell the employee that the testing request is a direct order and that refusal to comply with a direct order of an authorized supervisor or command officer might subject the employee to discipline, up to and including dismissal.

       g.    After the initial test results are known, the supervisor, command officer or escort will contact the Internal Affairs on duty/on-call command officer for further guidance. If the Internal Affairs on-duty/on-call command officer is unavailable and the supervisor, command officer or escort has a reasonable doubt about the employee's ability to satisfactorily and safely meet job requirements, the supervisor, command officer or escort will place the employee on investigatory leave pending results of testing or other administrative determinations.

       h.    No supervisor, command officer or escort should allow an employee to drive to or away from the testing site or the work site. However, if the employee does drive off, follow OMS 204.02.

       i.    During regular OHSC hours, the testing will be conducted at one of the OHSC testing sites. These testing sites are located at Denver Medical Health Center, 605 Bannock Street, 4th floor, and the Denver International Airport, Main Terminal, 6th level. After regular hours, the supervisor or command officer will page the OHSC alcohol and drug testing personnel at (303) 851-2877 to arrange for immediate testing.

       j.    Testing should be administered within two (2) hours of making a reasonable suspicion determination. If this two (2) hour time frame is exceeded, the supervisor or command officer should document the reason the test was not promptly administered on Drug and Alcohol Testing (DPD 667). Supervisors or command officers who do not test employees within this established time frame may be subject to discipline, up to and including dismissal.

       k.    Supervisors, command officers and escorts will keep the employee's name and identifying information restricted to persons on a need to know basis.

   2.    Illegal drugs

       a.    Follow the steps listed above in Section 17.e.1.

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

    b.    However, testing for illegal drugs should be administered within eight (8) hours of making a reasonable suspicion determination. If this eight-hour (8) time frame is exceeded, the supervisor or command officer must document the reasons the test was not promptly administered on Drug and Alcohol Testing (DPD 667). Supervisors or command officers who do not test employees within the established time frame may be subject to discipline, up to and including dismissal.

    c.    If a supervisor or command officer has reasonable suspicion that an employee appears to be in possession of, selling or transferring illegal drugs not within the employee's official duties, the Internal Affairs on-duty/on-call command officer will be notified.

3.    Post-accident testing

    a.    As soon as practicable following a driving or other workplace accident, the supervisor or command officer will ensure that driver-employee is tested for alcohol and drugs when the accident:

        1.    May have been the fault of the employee and the accident involves a fatality; or

        2.    May have been the fault of the employee and any individual was injured severely enough to receive medical treatment immediately away from the scene of the accident; or

        3.    May have been the fault of the employee and the accident resulted in disabling damage to any vehicle or any equipment; or,

        4.    There is reasonable suspicion to test the employee.

    b.    Post-accident alcohol and drug testing should be administered within two (2) hours following the accident. Supervisors or command officers who do not test employees within the established time frames may be subject to discipline, up to and including dismissal.

    c.    When one of the post-accident criteria for testing applies and the incident involved a death, serious injury or an allegation that a serious crime has been committed, the District Attorney's Office will be contacted prior to ordering drug and/or alcohol testing.

4.    Random Testing

    a.    The department may implement, with the Denver City Attorney's approval, random alcohol and drug testing for employees deemed to perform safety-sensitive functions for the department.

    b.    Pursuant to the DOT regulations, random alcohol testing will be conducted annually on 25% of the average number of City commercial driver's license positions in existence. This percentage may be amended from time to time by the DOT. Alcohol testing will be conducted on a random, unannounced basis just before, during or just after the employee performed safety-sensitive functions.

    c.    Pursuant to the DOT regulations, random drug testing will be conducted annually on 50% of the average number of City commercial driver's license positions in existence. This percentage may be amended from time to time by the DOT. Drug testing will be conducted on a random, unannounced basis. There is no requirement that this testing be conducted in immediate time proximity to performing safety-sensitive functions.

5.    Return to Duty Testing

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

If an employee has violated the prohibited conduct listed in Section 15 b. of this provision, the employee will not return to perform department duties unless the employee has completed a successful return to duty alcohol and drug tests and any other requirements imposed by Executive Order 94.

f.    Testing and Documentation

1.    When a Denver Police Department employee is transported for an Executive Order 94 related test, whether post-accident, reasonable suspicion or other test, both a drug and alcohol test are required. Testing will be done at the Occupational Health and Safety Clinic or Denver Health Medical Center under most circumstances.

2.    Escorting supervisors will complete Drug and Alcohol Testing (DPD 667), briefly outlining the reason for the test and follow the distribution at the bottom of the form.

g.    Injured Employees

When a Denver Police department employee is transported to a medical treatment facility, the supervisor will determine the following:

1.    If the employee will be released within two (2) hours of the incident the supervisor will escort the employee to the Occupational Health and Safety Clinic (OHSC) for testing.

2.    If the employee is not going to be released within two (2) hours, the OHSC lab technician will be contacted and respond to DHMC to administer the tests. If the employee is hospitalized at another treatment facility, the OHSC lab technician will not respond. The escorting supervisor must ask the treatment staff to perform the tests.

3.    If the employee is initially unconscious and regains consciousness within the two-hour (2) period, both drug and alcohol tests will be administered.

4.    If the employee regains consciousness after the two-hour (2) period but before eight (8) hours, the alcohol test will not be administered, but the drug test will be completed.

5.    If the employee remains unconscious for more than eight (8) hours, contact the Professional Development Unit who will in turn contact the Denver City/District Attorney's office for direction.

6.    If the event of a change in shift, it is the responsibility of the original supervisor to inform the oncoming supervisor of the situation. The oncoming supervisor will then ensure that the tests are completed within the time constraints.

7.    Positive Tests

When an employee is tested for drugs and alcohol, the requesting supervisor will receive the test results immediately. Should the results indicate positive for drugs and/or alcohol, the supervisor will immediately notify the on duty or on call Internal Affairs Unit representative.

8.    Evening/Weekend Tests

In the event a test is needed during other than normal duty hours (0700-1500) and a call out is necessary, employees will contact Denver 911 personnel who will then contact the OHSC on-call Technician.

**503.02   COMMENDATIONS**

**(1)    POLICY:**

The Denver Police Department recognizes that its employees consistently perform their duties at a high level. However, sometimes the actions of its employees rise above the standard expected, meriting special recognition. The department also acknowledges that the total police mission could not be

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

accomplished without the efforts of all its employees, both sworn and non-sworn. Furthermore, the department recognizes the vital and beneficial contribution made by its volunteers and residents.

Therefore, it is the policy of the Denver Police Department to award in an official manner, units, employees, volunteers, and residents who demonstrate meritorious conduct and exemplify and embody the standards set forth in the following policy: promote community involvement and bring honor upon themselves, the department, and the City and County of Denver.

There are two employee recognition events:

- Denver Police Foundation – individuals will be presented with the appropriate medal, shirt pin, and/or certificate.
- Denver Police Department Recognition – a recognition event for employee award recipients, family, and friends. No awards will be presented.
- All other award recipients will be presented with a certificate by the appropriate bureau/district commander/director.

(2)     **DENVER POLICE DEPARTMENT COMMENDATIONS:**

- Medal of Honor
- Medal of Valor
- Preservation of Life
- Distinguished Service Cross
- Purple Heart
- STAR (Superior Tactics and Response)
- Police Merit
- Excellence in Crime Prevention
- Lifesaving
- Community Service
- Humanitarian Service
- Official Commendation
- Chief's Unit Citation
- Innovation in Police Service Unit Citation
- Excellence in Crime Prevention Unit Citation
- Community Hero
- Outstanding Volunteer
- Officer of the Year
- Career Service Employee of the Quarter
- Career Service Employee of the Year

(3)     **PROCEDURES:**

a.      Any employee of the Denver Police Department may nominate a sworn officer, professional staff, VIPS, or other person for an applicable commendatory award. Unless otherwise stipulated by award name or description, all employees and volunteers are eligible to receive any of the department commendatory awards.

   1.     All nominations will be prepared on a DPD 200, signed by the commending individual, and submitted electronically in BlueTeam. The nomination will follow an approval process in BlueTeam until presented to the Awards Committee.

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

    2.    Any nomination prepared by an outside law enforcement agency will be forwarded to the Awards Committee chairperson.

    3.    Nominations for Volunteer of the Year will be sent to the Volunteer Program Administrator, who will then forward the nomination to the Chief of Police.

    4.    All letters of compliment and commendation from any other source will be forwarded to the Office of the Chief of Police.

b.    Nominations will be written in a clear and concise fashion, including the employee's name and badge number/employee ID. They will omit police jargon or any other detailed information about suspects in the incident (e.g., race, age, D.O.B., direction of flight, etc.). Additional documents such as supplementary reports, after-action reports, commendatory action report, or correspondence should be submitted to assist the board in determining the appropriate award.

c.    When more than one employee is involved in a commendable incident, the narrative of the nomination will specify the actions of each employee, aiding the awards committee in recommending the most appropriate award.

d.    Unless otherwise waived by the Chief of Police or the chair of the awards committee, all nominations are required to be submitted to the awards committee within six (6) months of the incident.

e.    All commendable actions resulting from involvement in a major event, such as an officer-involved shooting, will be considered by the awards committee at the same time.

    1.    Officer-involved shootings must receive a letter of clearance from the Denver District Attorney's Office and the department's Use of Force Review Board before the incident can be reviewed.

    2.    The awards committee member will, at this meeting, review the case with the investigator, view all video tapes, and listen to any audio tapes. All aspects of the incident and all proposed commendations will be discussed, but no final determination will be made concerning any awards at this time.

    3.    A conference call meeting will be acceptable at the discretion of the chair of the awards committee.

f.    Historical Awards:

Procedure for consideration of a "historical" award nomination:

- The nominating person must conduct all research and investigation.
- The nomination will be sent via BlueTeam for review.
- If the award nomination is approved it will be presented at the annual retiree luncheon, usually coinciding with the police memorial ceremony held annually in May.

**(4)**    **AWARDS COMMITTEE:**

a.    The Denver Police Awards Committee will be comprised of the chief of staff for the Chief of Police (or designee) as chairperson in a non-voting capacity (except to break a tie), one lieutenant, one sergeant, two officers below the rank of sergeant, two Career Service (CS) employees, and one community member.

    1.    The lieutenant, sergeant, officers, CS employee and community member will be nominated by the chairperson (with affected commander/director's approval) and approved by the Deputy Chief.

    2.    Final selection of board members will be made by the Chief of Police.

b.    The board will review and evaluate each nomination based on the information received. During consideration of awards, the board may choose to investigate the nomination and is empowered to call any officer witness and/or invite community witnesses to appear.

**O P E R A T I O N S   M A N U A L**
DENVER POLICE DEPARTMENT

    c.    The awards committee will review nominations and determine the appropriate award:

        1.    Considerations for Medal of Honor, Medal of Valor, Preservation of Life, Distinguished Service Cross, and Purple Heart Award will be forwarded to the Deputy Chief. The Deputy Chief will review the board recommendation and then forward to the Chief of Police, who will determine what, if any, award is appropriate.

        2.    All other nominations will be forwarded to the Chief of Staff for the Chief of Police for review and finalization.

    d.    The awards committee may determine that the nomination does not meet the standards and eligibility for any listed award. In this instance, the awards committee will forward the nomination packet back to the approving division chief so that the nomination may be:

        1.    Recognized at the unit/section/bureau/district level, including but not limited to, a journal entry and archiving of the nomination packet within the employee's personnel file.

        2.    Resubmitted with additional facts and support in writing. The individual making the appeal will be given the opportunity to appear in person at a future awards committee meeting. Any further appeal is to be made to the Chief of Police whose decision will be final.

**(5)**    **AWARDS STANDARDS AND ELIGIBILITY:**

    a.    Medal of Honor:

        1.    Awarded by the Chief of Police to an individual for an act of outstanding bravery or heroism by which the individual has demonstrated in great degree the characteristics of selflessness, personal courage, and devotion to duty at the risk of their own life. The individual's actions substantially contributed to the saving of or attempted saving of a human life.

        2.    This is the highest and most prestigious department award and there must be no margin of doubt or possibility of error in awarding this honor. To justify the decoration, the actions must clearly render the individual conspicuous by an act so outstanding that it clearly distinguishes heroism beyond the call of duty from lesser forms of bravery. It must be the type of deed that, if not done, would not subject the individual to any justified criticism.

        3.    A posthumous award may be made to an individual who has lost their life under conditions where the officer endangered themselves in circumstances consistent with good police practices.

        4.    The award will consist of a Medal of Honor, a shirt pin, and a paper certificate.

    b.    Medal of Valor:

        1.    Awarded by the Chief of Police to an individual for an act, in the face of great danger, wherein valor, courage, and bravery are demonstrated over and above that normally demanded and expected.

        2.    This is the second highest department award and to warrant this distinctive decoration, the act must be performed in the presence of great danger or at great personal risk and by its nature involved the saving of a human life, or attempted saving of a human life, the prevention of a serious crime, or the apprehension of a person who committed a serious crime. The action must be performed in such a manner as to render the individual highly conspicuous.

        3.    The award will consist of a Medal of Valor, a shirt pin, and a paper certificate.

    c.    Preservation of Life:

        1.    Awarded by the Chief of Police to an individual who performs an act of heroism, demonstrates good judgment, zeal, or ingenuity over and above what is normally demanded and expected, to preserve the life of another during a critical, volatile, or

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

dangerous encounter while protecting the safety and security of the public and their colleagues.

2. For purposes of this award, a *critical, volatile, or dangerous encounter* will refer to any rapidly unfolding and dynamic incident where the subject is armed and the ability or intent to use lethal force is present.

3. The award will consist of a Preservation of Life medal, a shirt pin, and a paper certificate.

d. Distinguished Service Cross:

1. Awarded by the Chief of Police to members who are cited for gallantry not warranting a Medal of Honor or a Medal of Valor. The heroic act(s) performed must render the individual conspicuous and well above the standard expected.

2. The award will consist of a Distinguished Service Cross, a shirt pin, and a paper certificate.

e. Purple Heart Award:

1. Awarded by the Chief of Police to an individual who is seriously or critically injured while performing a heroic and/or police action. This award will be limited to those cases resulting from attack by an assailant, personal combat, or the performance of an act of valor.

2. This Purple Heart can be awarded in conjunction with other awards.

3. The award will consist of an enamel bar and medal.

f. STAR (Superior Tactics and Response) Award:

1. Awarded to an individual who, through exceptional tactics, acts to successfully resolve a critical incident, thereby promoting a culture of safety and professionalism to which all law enforcement professionals should aspire. The tactics displayed or performed must be conspicuously effective and above the standard expected.

2. *Exceptional tactics* includes utilization of proper tactics and appropriate force which mitigated the level of danger, and which were directly responsible for preventing the incident from escalating to a deadly force situation.

3. The award will consist of an enamel bar and a paper certificate.

g. Police Merit Award:

1. Awarded by the Chief of Police to an individual who distinguishes themselves with exceptional meritorious service. Through personal initiative, tenacity, and great effort acts to solve a major crime or series of crimes or develops a program or plan which contributes significantly to the department's objectives and goals.

2. The award will consist of an enamel bar and a paper certificate.

h. Excellence in Crime Prevention:

1. Awarded to an individual who demonstrates personal initiative and ingenuity by developing a program or plan which contributes significantly to the department's crime prevention strategy, or through innovation combats issues affecting the community.

2. The award will consist of an enamel bar.

i. Lifesaving Award:

1. Awarded by the Chief of Police to an individual who, through exceptional knowledge and behavior, performs a physical act which saves the life of another person and there is no danger to the individual's life.

2. The award will consist of an enamel bar.

j. Community Service Award:

**O P E R A T I O N S    M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

1.    Awarded to an individual who, by virtue of sacrifice and expense of their time or personal finance, fosters or contributes to a valuable and successful program in the area of community service or affairs, or who acts to substantially improve police/community relations through contribution of time and effort when not involved in an official capacity.

2.    This award will consist of a paper certificate.

k.    Humanitarian Service Award:

1.    Awarded to an individual who demonstrates an exceptional level of selflessness and dedication to the well-being of others through extraordinary personal sacrifice. It recognizes individuals who voluntarily undertake actions outside their official duties to create a profound and lasting positive impact on another person's life or the community, often at great personal cost or risk to themselves. This honor is reserved for those contributions that go beyond temporary gestures of kindness, representing lifelong commitments that redefine the future of those they help.

2.    The act must be voluntary and not directly related to the individual's official duties. The generosity, sacrifice, or risk taken must have a significant, life-altering impact on the recipient or community, and the individual's actions must exemplify the highest ideals of service and sacrifice, going well beyond what is truly expected.

3.    The award will consist of a shirt pin and certificate.

l.    Official Commendation:

1.    Awarded to an individual who by exemplary conduct and demeanor, performs at a superior level of duty, exhibiting perseverance with actions resulting in a significant contribution to the department and/or improvement to the quality of life in the community.

2.    The award will consist of a paper certificate.

m.    Chief's Unit Citation:

1.    Awarded by the Chief of Police to an entire unit, section, or bureau/district of the department whose members perform their assigned function in an unusually effective manner.

2.    The award will consist of a fabric streamer for display in conjunction with the bureau/district flag and a paper certificate.

n.    Innovation in Police Service Unit Citation:

1.    Awarded by the Chief of Police to a division, district, or bureau in recognition of innovative efforts and support of the community or department to address social harms, improve resiliency and wellness in our members, or improve prosocial policing practices. Innovations should further the department's efforts to be the safest, most equitable city in the country.

2.    The award will consist of a fabric streamer for display in conjunction with the bureau/district flag and a paper certificate.

o.    Excellence in Crime Prevention Unit Citation:

1.    Awarded by the Chief of Police to a division, district, or bureau in recognition of exceptional, quantifIAle policing efforts to address and reduce the frequency of adverse impacts of one or more crime types within the Denver community. Programs or focused efforts can be related to education, alternatives to traditional criminal justice approaches, community or agency collaborations, and/or enforcement.

2.    The award will consist of a fabric streamer for display in conjunction with the bureau/district flag and a paper certificate.

p.    Community Hero Award:

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

       1.      Awarded to an individual who provided assistance to a law enforcement officer in response to a criminal or emergency incident, placing themselves in danger of bodily injury.

       2.      The award consists of a certificate and a pin for wearing on clothing.

q.      Outstanding Volunteer Award:

       1.      Awarded by the Chief of Police to an individual who, by virtue of sacrifice and expense of his or her time, fosters or contributes to a valuable and successful program in the area of the department's mission, vision and values, or who acts to substantially improve police/community relations through contribution of time and effort when not involved in an official capacity.

       2.      This award will consist of a paper certificate.

r.      Officer of the Year Award - active duty sworn police officers:

       1.      This award will be presented annually to an officer who has represented the department in all facets of law enforcement with a commitment to excellence, in support of the mission and values of the organization. The officer has consistently persevered in the prevention of crime and demonstrated initiative, leadership, and dedication to the law enforcement profession.

       2.      This award may be presented annually to an individual officer, technician, corporal, detective, sergeant, or command officer, or as determined by the Chief of Police.

       3.      The award will consist of a plaque and a shirt pin.

s.      Career Service Employee of the Quarter:

       1.      This award will be presented quarterly to a CS employee who continually performs their duties through perseverance and dedication to excellence and outstanding customer service. Demonstrating a positive attitude when interacting with others and highly motivated with innovative ideas to improve efficiency, benefiting the department and community. Documentation of positive customer feedback will be considered for this award.

       2.      The award will consist of a paper certificate.

t.      Career Service Employee of the Year Award:

       1.      This award will be presented annually to a CS employee who has represented the department in all facets of service with a commitment to excellence, in support of the values of the organization, and a desire to represent the department in the manner in which they were hired.

       2.      The award will consist of a plaque.

u.      Volunteer of the Year Award – Volunteers in Police Service:

       1.      This award will be presented annually to a volunteer in the program with a distinguished commitment to excellence, in support of the values of the organization.

       2.      The award will consist of a plaque.

## 503.03  POLICE ANNUAL REVIEW

**(1)**    **REQUIREMENT:**

The Police Annual Review will be completed every calendar year for officers up to, and including, the rank of commander. It will document the officer's performance throughout the year, regardless of any change to assignment or rank. Reviews must be finalized by supervisors through Workday with a final electronic submission due at the conclusion of the officer's birth month.

**(2)**    **GENERAL OVERVIEW:**

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

Using designated assessment categories and providing other relevant and/or required information, the Police Annual Review is comprised of a supervisor assessment and a 2nd level manager review. To ensure all officers are evaluated consistently, Job Aids are available on DPDWeb.

**(3)    JOURNAL ENTRY:**

Journal entries will be documented within Workday and utilized by supervisors to record incidents of noteworthy attention to duty or minor misconduct by their subordinate officers. Commendations, as well as disciplinary matters, including sustained formal disciplinary actions, will also be recorded.

a.    One journal entry a month per officer is recommended.

b.    Instances of oral counseling or admonishment administered for failures of standard policy or procedural guidelines (e.g., tardiness, incomplete reports, etc.) should be recorded in a journal entry and will not be termed an oral reprimand unless formalized by a sustained internal affairs complaint.

c.    No officer will have any comment adverse to their interest entered in a journal entry or personnel file without having the opportunity to read the instrument containing the comment. To appeal a journal entry, see section (6).

**(4)    SUPERVISOR/COMMAND RESPONSIBILITY:**

Each officer will be evaluated by their immediate supervisor.

a.    Supervisors within an officer's chain of command may access all completed journal entries and annual reviews under their purview.

b.    Supervisors will ensure that annual reviews for personnel within their chain of command are completed by the required deadlines.

**(5)    RATING CHANGES AND ADDITIONS:**

a.    Changes and additions will be made in accordance with the Job Aids.

b.    Prior to finalization of a review and its presentation to an officer, 2nd level managers and higher-ranking personnel who were within an officer's chain of command during the review period may change the rating and/or add comments. Officers will be notified of any such changes and may review them within Workday.

**(6)    APPEAL PROCESS:**

Officers can appeal any Police Annual Review rating or journal entry within thirty (30) days of the date they were first notified. Appeals must be in writing (DPD 200 or email) and must detail the reason(s) why a change should be made.

a.    Officers below the rank of lieutenant will submit their appeal through the chain of command to their bureau/district commander or director. The final decision for any appeal rests with the respective bureau/district commander or director.

b.    Lieutenants and commanders will submit their appeal through the chain of command to the officer ranked directly above their immediate supervisor. The final decision for any appeal rests with the ranking officer directly above the immediate supervisor.

c.    Approved changes for completed reviews may require the assistance of Safety HR and/or Technology Services.

d.    All appeal documentation will be forwarded to Safety HR for inclusion within the officer's personnel file.

**(7)    RECRUIT OFFICERS / POLICE TRAINING PROGRAM OFFICERS:**

The Police Annual Review does not apply to recruit officers or probationary officers while participating in the Police Training Program. The Academy Unit is responsible for providing a means of documenting performance while in the academy or in the Police Training Program. The Police Annual Review, as referenced in this section, will be utilized upon successful completion of the Police Training Program.

**O P E R A T I O N S   M A N U A L**
DENVER POLICE DEPARTMENT

a.   While assigned to the police academy, recruit officers are evaluated by their performance on written and practical tests designed to measure knowledge and application of basic police functions. Outstanding and deficient performance is documented in the ADORE application. Additionally, recruits are introduced to the Police Training Officer (PTO) model of training at the academy. In the PTO model, recruits document their own performance through training notes and coaching and training reports (CTR). Supervisors assess these self-evaluation tools for accuracy and resolve any discrepancies by working with the recruit.

b.   After leaving the academy and while receiving field training, each probationary officer will be evaluated by a Police Training Evaluator (PTE) at least twice during training using the PTO Evaluation Report. The PTO Evaluation report will be reviewed and approved by the appropriate training coordinator and PTO Administrator and reviewed with the probationary officer. The evaluation report is stored in the ADORE application and may be accessed by training and command staff.

**503.04   PERSONNEL ASSESSMENT SYSTEM (PAS)**

**(1)   PURPOSE:**

The Personnel Assessment System (PAS) is a Denver Police Department program created to identify officers who have a higher involvement in designated areas such as, but not limited to use of force, complaints, and scheduled discipline when compared to department set thresholds. Utilizing intervention techniques, the goal of PAS is to enhance the success of Denver police officers by identifying individual areas of performance improvement, and to reinforce any positive behaviors or performances during the review.

a.   The department's provision of training, counseling, support, and other services under this policy does not in any way diminish an officers' ultimate responsibility for their performance, including the correction of any identified performance deficiencies.

b.   Nothing in this policy should be construed to suggest that a PAS intervention is a replacement for the department's disciplinary procedures.

c.   When required, participation in a personnel assessment strategy is mandatory.

d.   Wellness and resiliency of the officers will also be evaluated and responded to during the PAS Debrief.

e.   PAS reviews MAY result in Performance Development Plan-Correctives when directed by an officer's chain of command.

**(2)   DEFINITIONS:**

**PAS** – The Personnel Assessment System (PAS) is a non-disciplinary process used to identify and address individual areas of improvement early in their development. PAS relies primarily on performance data, compiled to give supervisors an overview of the performance. A supervisor will review the data; not only to determine if intervention techniques are needed, but to also reinforce any positive behaviors or performances observed during the review.

**Referral** - A referral is a direct recommendation made into the PAS program.  Recognizing the need for the human element in employee success, referrals may be made by managers, supervisors, peers, family, or friends. In addition, concerned officers may self-refer.  Referrals may be based on information discovered in PAS data sources, personal observations, or knowledge of other circumstances that could have an adverse effect on officer performance and wellness.  Referrals may be made directly to the Professional Development Unit (PDU), or to any other supervisor or command officers who will bring the referral to the attention of PDU.

**Review** - A review of an officer's performance and conduct may occur because of several circumstances and will be based on the totality of the circumstances. For example, a review may be initiated because of a single Internal Affairs Unit (IA) investigation, a single complaint coupled with other performance issues,

a possible pattern of complaints or misconduct, or by reaching established thresholds. A review may involve a management or supervisory examination of all available information pertaining to officer(s) that may or may not indicate a need for intervention. The goal of the review is to determine whether any level of intervention is needed to assist the officer.

**Thresholds** – Thresholds will determine the number or frequency of incidents tracked in the PAS computer program that may warrant a review. Thresholds may be adjusted periodically by the Chief of Police. Thresholds will be made public to all officers both in the DPD Operations Manual and on DPDWeb.

Thresholds are meant to prompt an examination of an officer's performance that may indicate a disparity compared to similarly situated officers. Thresholds are meant to be practical and reasonable.

Additionally, not all performance data available in the PAS system will have a related threshold. The identification of effective thresholds is an ongoing process impacted by the availability of performance related information, technology, and the proper identification of indicators of officers with performance problems.

***Performance metrics that will trigger a mandatory PAS review (a report of those qualifying for PAS review is generated daily):***

- Four (4) or more use of force incident types as a subject officer within the previous three (3) months
- Two (2) or more complaint or scheduled discipline incident types as a subject officer within the previous three (3) months
- A total of four (4) or more incident types (any combination) within the previous three (3) months
- Two (2) or more accidental and/or deliberate firearm discharges in one (1) year

***NOTE:*** *Incident types include:*
- *Use of force (excluding cases where no force was used but the suspect complained of injury)*
- *Formal complaints (including newly named defendants in civil lawsuits)*
- *Sustained and Informal complaint cases will count as an incident type within the PAS Review. (Multiple incident types that stem from a single event will not be counted twice)*

*Excluded types include:*
- *Exonerated complaints*
- *Unfounded complaints*
- *Declined complaints (BWC or mediation). NOTE: Declined Complaints will not count towards complaint thresholds in initiating a PAS Review but will be provided to supervisors to use during debrief discussions.*

**Response Level** - The response level will be based on each particular PAS review or referral. Response levels are intended to improve officer performance and are not a disciplinary action. There are three possible levels of response that may be applied to a review:

- Level One
- Level Two
- Level Three

(3)  **ROLES AND RESPONSIBILITIES:**

a.  Professional Development Unit (PDU) Responsibilities:

   1.  PDU is responsible for establishing and administering the PAS, and generating reports specified in this policy, as requested by a commanding officer for personnel under their command, or as otherwise directed by the Chief of Police.

   2.  PDU assists supervisors with coordination of psychological services, Peer Support, the Training Section, the Denver Employee Assistance Program, and other available services

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

      to develop effective intervention strategies. The purpose of the intervention is to enhance employee success by addressing behavior before the conduct becomes more serious.

    3.    Whenever a referral or review is initiated, PDU will prepare documentation for review by the assigned commander indicating a level 1, level 2, or level 3 response.

    4.    At a minimum, PDU will monitor the EIPro system daily, identifying officers who have reached a review limit for three (3) month thresholds.

    5.    PAS reports are intended to assist command and supervisory personnel in the evaluation and guidance of their subordinates. PAS reports alone will not form the basis for disciplinary action.

    6.    Develop and share weekly reports that outline the number of delinquent PAS reviews and number of PAS reviews by division, bureau, district, section, or unit.

    7.    K9 bite related use of force incidents will not be included in the Personnel Assessment System; instead, the Chief's Office will rely on the quarterly reports generated from the Metro/SWAT Section. A PAS Report may be initiated after a review of these reports by the Chief of Police (or designee).

  b.  Supervisory Officer Responsibilities:

    It is expected that supervisory officers review the EIPro information for the officers under their command at least once a month.

  c.  Command Officer Responsibilities:

    Command officers are responsible for the development, execution and documentation of any necessary performance development plans implemented under their supervision. Command officer oversight will be tracked within the command officer's performance evaluation system as an "action plan" for that quarter. The outcome rating will be based on the success or failure of the plan implemented, the effort exhibited by the command officer working with the supervisor and/or officer to accomplish the plan, and the proper weekly documentation of the plan.

**(4)**    **PROCEDURES FOR PAS REVIEW OR REFERRAL:**

PAS information is confidential and will not be disseminated to unauthorized persons without approval from the Department of Safety Records Administrator. Individual users are responsible to maintain the security of the PAS computer program. PAS may not be used for personal use or gain, and misuse of PAS can result in discipline.

  a.  If a supervisor finds inaccurate information in a PAS review, they will contact the PDU with a description of the possibly inaccurate data. The PDU will cause the record in question to be corrected, when appropriate, and inform the officer and the supervisor of the outcome.

    1.    **Level One – First PAS Review within a 12-month period - completed by officer's sergeant**

      Based on the totality of the information available, the issue is of such a nature as to necessitate the notification of the officer and their sergeant. The officer's sergeant will notify the officer.

      • The commander/designee will coordinate with the Professional Development Unit to identify any appropriate resources to which the officer may be referred.

      • A thorough review of the incidents will be completed by the sergeant to identify any performance issues. The officer's input will be sought to identify training opportunities. Whether or not any issues or deficiencies are identified, the sergeant will provide a written explanation to the officer's division chief, through the chain of command, within fourteen (14) days of receipt of the PAS Review, detailing their actions.

**O P E R A T I O N S   M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

- The Professional Development Unit will retain copies of all PAS response plans once approved by the Division Chief. The copies will be archived on a computer drive accessible only to PDU sergeants.
- All documentation of completed training during PAS plans will be forwarded to the Professional Development Unit.
- Command officers may elevate any officer to a Level Two response. When an officer receives a second PAS review within twelve (12) months, a Level Two response will be required.
- A sergeant will address and respond to a Level One review with input from the officer's lieutenant.
- A journal entry within the officer's performance evaluation will be made noting the Level One – Notification review.

2. **Level Two – Second PAS Review within a 12-month period - completed by officer's Lieutenant**
Based on the totality of the information available, the issue is of such a nature as to necessitate command level intervention. The officer's lieutenant will notify the officer.

- The lieutenant will coordinate with Professional Development Unit to identify any appropriate resources to which the officer may be referred.
- A thorough review of the incidents will be completed by the lieutenant to identify any performance issues. The officer's input will be sought to identify any identified training opportunities. Whether or not any issues or deficiencies are identified, the Lieutenant will provide a written explanation to the officer's division chief, through the chain of command, within fourteen (14) days of the receipt of the notice, detailing their actions.
- The Professional Development Unit will retain copies of all PAS response plans once approved by the officer's division chief.
- All documentation of completed training during PAS plans will be forwarded to the Professional Development Unit and documented in Workday.

3. **Level Three – Third PAS Review within a 12-month period - completed by officer's Commander**
Based on the totality of the information available, the issue is of such a nature as to necessitate the intervention of the officer's commander or their designee.
- The officer's commander will coordinate with Professional Development Unit to identify any appropriate resources to which the officer may be referred.
- A thorough review of the incidents will be completed by the commander to identify any performance issues. The officer's input will be sought to identify any identified training opportunities. Whether or not any issues or deficiencies are identified, the Commander will provide a written explanation to the officer's division chief, through the chain of command, within fourteen (14) days of the receipt of the notice, detailing their actions.
- The Professional Development Unit will retain copies of all PAS response plans once approved by the officer's Division Chief.
- All documentation of completed training during PAS plans will be forwarded to the Professional Development Unit and documented in Workday.

**(4)**   **INTERVENTION STRATEGIES:**

Appropriate intervention strategies may include, but are not limited to:

**O P E R A T I O N S    M A N U A L**
D E N V E R   P O L I C E   D E P A R T M E N T

a.    Referral to Peer Support, psychological services, police chaplain, Denver Police Resiliency Program, Employee Assistance Program, or other appropriate employee support system.

b.    Coordination with the Professional Development Unit to identify training needed to improve an officer's performance. The coordination may include CEP training, Police One videos, or any other department authorized mandatory training that target personal or professional problems that the officer may be facing (i.e., communications, cultural awareness, coping with stress, anger management, or skills training such as remedial driving, arrest control techniques, etc.).

c.    Non-disciplinary coaching or direction by the officer's supervisor, developing a monitoring program or a follow-up plan, or encouraging the officer to help the supervisor determine the best intervention option for the situation.

d.    Reassignment or transfer.

e.    Provide direct supervisory observation by assigning a corporal or sergeant to accompany, or "shadow" the subject officer for a time-period and frequency determined by the officer's commander. This strategy is strongly encouraged, recognizing that staffing levels can be a factor.

f.    Body-worn camera (BWC) auditing and coaching.

**503.05  PERFORMANCE DEVELOPMENT PLAN - CORRECTIVE**

**(1)    PURPOSE:**

The Denver Police Department authorizes the use of a Performance Development Plan-Corrective (PDP) to serve as a tool to address underperformance, performance that does not align with the mission, vision, and values of this department, and to foster professional growth. The PDP allows the department to set clear expectations and requires the officer to be responsible for their performance.

**(2)    GENERALLY:**

A PDP will be created for officers identified as having either performance, behavioral deficiencies, or when required in the following circumstances:

a.    Any officer who receives a rating of "Development Needed" on their Performance Evaluation.

b.    When performance deficiencies requiring correction are recognized outside of the officer's rating period.

c.    Corrective action prompted by a Personnel Assessment System (PAS) review, as directed by the Professional Development Unit.

d.    As directed by Internal Affairs, or in conjunction with sustained cases - category D and above.

**(3)    EXCLUDED USES:**

PDPs will not take the place of the following:

a.    Complaint and Discipline Procedures, as identified in OMS 503.01.

b.    Fitness for Duty evaluations implemented by the department. Contact the Professional Development Unit for guidance on fitness for duty evaluations.

**(4)    GOAL:**

Performance Development Plans are designed to bring the officer's performance rating to the "Thriving" category on the Performance Evaluation. PDPs implemented as a corrective action/plan will have built-in timeframes, deadlines, detailed documentation, and a training plan.

Every PDP, and subsequent training plan, will be unique to the officer and focused on the identified area of improvement. All PDPs will be completed using the PDP template and job aid, located in the DPD template drive. All four sections of the document will be completed.

**(5)    DRAFT AND APPROVAL WORKFLOW:**

**O P E R A T I O N S   M A N U A L**
DENVER POLICE DEPARTMENT

Once a corrective PDP has been drafted by the supervisor or command officer, it will be forwarded to the bureau commander/director for approval. Once approved at the commander/director level, the PDP will be forwarded to the Professional Development Unit. The Professional Development Unit will consult with the City Attorney's Office on all PDPs prior to the PDP being presented to the officer. Once approved by the City Attorney's Office, the Professional Development Unit will forward the PDP to the respective division chief for approval, before being sent back to the officer's commander/director for implementation. Refer to the PDP job aid for further explanation on creation of, workflow and implementation.

**(6)    COMPLETION:**

Upon successful completion of the PDP, a closure letter will be provided to the officer, signed, and forwarded to the Professional Development Unit. PDP plans can be extended, if necessary and after consult with the Professional Development Unit, for a one-time 30-day period. If an officer fails to complete the PDP, the matter will be referred to the Internal Affairs Unit for disciplinary consideration.

**503.06  FITNESS FOR DUTY EVALUATIONS**

**(1)    PURPOSE:**

Fitness for duty evaluations play a critical role in ensuring the physical, mental, and emotional well-being of law enforcement officers. Police officers face unique challenges that demand peak performance, making these evaluations essential for maintaining a police department that is both resilient and effective. This process not only safeguards the individual officer, but also upholds the integrity of law enforcement, fostering the community's trust in those sworn to protect and serve.

**(2)    DEFINITIONS:**

**Direct Threat:** A significant risk of substantial harm to the health or safety of the individual and/or others that cannot be eliminated or reduced by reasonable accommodation. A "significant" risk is a high standard and is not just a slightly increased risk.

**Fitness for Duty Evaluation (FFD):** A formal, specialized examination of an officer when there is a reasonable basis to believe an officer's ability to perform essential functions is impaired or that the continued service by the officer may be a direct threat to themselves, others, or the public due to cognitive or psychological factors.

**(3)    GENERALLY:**

A fitness for duty evaluation will commence when it is determined by an officer's supervisor, either through personal observations, knowledge, or information shared with them from a credible third-party, that an officer is a direct threat to themselves, others, or otherwise is unfit to perform their duties.

**(4)    INITIATION PROCESS:**

a.    Any supervisor who believes an officer's ability to perform essential functions is impaired will immediately initiate the FFD process through the employee's chain of command.

b.    Supervisors (sergeants and above) requesting a fitness for duty evaluation will be drafted on an Inter-Department Correspondence (DPD 200), thru the chain of command to the Chief of Police, detailing the reasons for the request.

c.    The request must include observations, including identifying how the officer's ability to perform specific job duties or functions is impaired and/or in what way the officer presents a direct threat to themselves, others, or how they are otherwise unfit to perform their duties.

d.    The Professional Development Unit will be immediately notified if any officer is hospitalized on a mental health hold.

**(5)    ONCE INITIATED:**

a.    Fitness for duty evaluations will be processed through the Professional Development Unit (PDU) and may require a suspension of police authority as determined by the PDU.

# O P E R A T I O N S   M A N U A L
D E N V E R   P O L I C E   D E P A R T M E N T

b.    While on an FFD, the officer's Telestaff will be managed by the PDU.

c.    FFDs related to medical conditions and/or disabilities will be forwarded to Safety HR in accordance with OMS 505.08 (2) c.4.

d.    FFDs required as a part of any active internal affairs investigation will be managed by the Internal Affairs Unit.