IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:25-cv-02005-PAB

REGAN BENSON,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, a municipality,
HANS LEVENS, in his individual and official capacities,
JOEL BELL, in his individual and official capacities,
AARON SANCHEZ, in his individual and official capacities,

    Defendants.

## REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, [ECF #14]

    Plaintiff, Regan Benson, by and through her counsel, Andy McNulty, Mari Newman, and Madeline Leibin of NEWMAN | MCNULTY, submits this Reply to Defendants' Response to Plaintiff's Motion for Preliminary Injunction, and states in support as follows:

1. **THE INJUNCTION MS. BENSON SEEKS IS NOT A "DISFAVORED" INJUNCTION.**

    Contrary to Defendants' arguments, [ECF #14], pp. 1-2, the requested injunction is not a "mandatory" injunction that is disfavored. The Tenth Circuit only considers an injunction mandatory if the requested relief "affirmatively requires the nonmovant to act in a particular way, and as a result . . . places the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction." *O Centro Espirita Beneficente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 979 (10th Cir. 2004). Here, the requested relief merely asks that this Court would simply prohibit Defendants from engaging in viewpoint discrimination as to Ms. Benson's application to serve on the Denver Police Department ("DPD") Use of Force

1

("UOF") Review Board. Further, it would not require this Court to provide ongoing supervision to assure that Defendants are abiding by the injunction, and Defendants make no argument that it would in their Response. *See* [ECF #14], pp. 1-2. Therefore, the requested injunction is not "disfavored[,]" and Ms. Benson's motion should not be more closely scrutinized, require a strong showing that Ms. Benson has a likelihood of success on the merits or require a strong showing that the balance of harms tips in Ms. Benson's favor.

2. **DEFENDANTS MISS THE MARK IN IDENTIFYING WHAT SPEECH OF MS. BENSON'S IS THE SUBJECT OF THIS LITIGATION.**

Fundamentally, Defendants' arguments fail because they confuse the speech that is the subject of this litigation. Contrary to Defendants' arguments, [ECF #14], pp. 6-7, 9-14, Plaintiff is *not* claiming that she has an unadulterated right to speak as a member of the DPD UOF Review Board, in public or otherwise. And, Plaintiff does not plan to violate DPD UOF Review Board rules or procedures should she be permitted to serve on the DPD UOF Review Board by speaking out without authorization. Instead, Plaintiff's claims are based on the fact that she was denied the ability to apply to sit on the DPD UOF Review Board because she had previously engaged in speech that was critical of the DPD.

Under long-established caselaw, Ms. Benson's public criticism of the DPD "falls easily within the First Amendment's muscular protection for 'criticism of government and public officials[.]'" *Jenner v. United States DOJ*, Civil Action No. 25-916 (JDB), 2025 U.S. Dist. LEXIS 99015, at *24 (D.D.C. May 23, 2025) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 276 (1964)). By raising concerns about the functioning of the DPD, both through public statements and the filing of two previous lawsuits, Ms. Benson engaged in First Amendment activity. *See Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) (stating that the plaintiff "was engaged in constitutionally protected activity when he alleged government corruption during the

2

public comments portion of the city council meetings"); *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988) (stating that "[s]peech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials, in terms of content, clearly concerns matters of public import"). Ms. Benson's claims are wholly based on Defendants' decision to bar her from applying to serve on the DPD UOF Review Board based on this clearly protected First Amendment activity. As outlined in Ms. Benson's initial motion, and below, Defendants cannot impose viewpoint-based restrictions on her ability to participate in the DPD UOF application process and retaliate against her based on this clearly protected speech.

3. **DEFENDANTS ADMIT THAT THEY DENIED MS. BENSON THE OPPORTUNITY TO APPLY FOR THE DPD UOF REVIEW BOARD BECAUSE OF THE VIEWPOINT OF HER PREVIOUS SPEECH.**

Defendants admit in their Response that they denied Ms. Benson the ability to apply for the DPD UOF Review Board because they deemed her "biased" due to her "history with DPD[.]" [ECF #14], p. 4. While they claim that the DPD UOF Review Board requires that candidates for the DPD UOF Review Board are unbiased, there is nothing in their own policies and procedures (which Defendants attached to their Response) that sets out requirements for applicants to the DPD UOF Review Board or specifically states that applicants must be unbiased. [ECF #14-1]; [ECF #14-2]; *see Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972) (holding that a law was unconstitutional because it "impermissibly delegates basic policy matters to policemen... for resolution on an ad hoc and subjective basis"); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 170 (1972) ("Where . . . there are no standards governing the exercise of the discretion granted by the ordinance, the scheme permits and encourages an arbitrary and discriminatory enforcement of the law.").

Further, by admitting that they refused Ms. Benson's ability to apply because of her alleged "bias" and "history with DPD[,]" Defendants are admitting viewpoint discrimination. Viewpoint

3

discrimination occurs when the government targets "particular views taken by speakers on a subject" or "the specific motivating ideology or the opinion or perspective of the speaker." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). Here, it is clear from the emails communications between Ms. Benson and Defendants that they banned her from applying to the DPD UOF Review Board because of her viewpoint: her past criticism of DPD. That is the alleged "bias" Ms. Benson was demonstrating: that she wanted DPD to be accountable for their past bad actions. This targeting of Ms. Benson because of her view on this issue was viewpoint discrimination in violation of the First Amendment. *See Otto v. City of Boca Raton*, 981 F.3d 854, 864 (11th Cir. 2020) ("The First Amendment exists precisely so that speakers with unpopular ideas do not have to lobby the government for permission before they speak.").

However, this Court does not even need to find that Ms. Benson was targeted because of her criticism of DPD to find there was viewpoint discrimination here. Viewpoint discrimination can exist "regardless of the government's benign motive ... or lack of animus toward the ideas contained in the regulated speech." *Reed v. Town of Gilbert*, 576 U.S. 155, 165 (2015). "Innocent motives do not eliminate the danger of censorship." *Id.* at 167.

Because of this, viewpoint discrimination has been defined by the Supreme Court in a "broad" manner. *Matal v. Tam*, 582 U.S. 218, 223 (2017) (Alito, J., opinion). The Supreme Court "has held that viewpoint discrimination exists even when the government does not target a narrow view on a narrow subject and instead enacts a more general restriction—such as a ban on all 'religious' speech or on all 'offensive' speech." *Am. Freedom Def. Initiative v. Suburban Mobility Auth.*, 978 F.3d 481, 499 (6th Cir. 2020) (quoting and citing *Iancu v. Brunetti*, 588 U.S. 388, 393 (2019); *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 393 (1993)).

For example, the Supreme Court has held that "a law disfavoring 'ideas that offend' discriminates based on viewpoint, in violation of the First Amendment." *Iancu*, 588 U.S. at 393 (quoting *Matal*, 582 U.S. at 223 (Alito, J., opinion)). "On its face, this ban could be viewed as 'evenhandedly prohibit[ing] disparagement of all groups,' whether Democrats or Republicans, capitalists or socialists, or 'those arrayed on both sides' of any other topic." *Am. Freedom Def. Initiative*, 978 F.3d at 499 (quoting *Matal*, 582 U.S. at 223 (Alito, J., opinion)). However, the Supreme Court held that "the provision violated the First Amendment" by discriminating "on the basis of viewpoint" because "[g]iving offense is a viewpoint." *Matal*, 582 U.S. at 223 (Alito, J., opinion); *see also Am. Freedom Def. Initiative v. King County*, 904 F.3d 1126, 1130-33 (9th Cir. 2018); *Am. Freedom Def. Initiative*, 978 F.3d at 499. Similarly, here, by banning all "biased" speakers from joining the DPD UOF Review Board, Defendants engaged in viewpoint discrimination by excluding those who Defendants believe would be "biased[.]" Defendants ban, which was imposed on Ms. Benson due to her alleged "bias[,]" was viewpoint-based.

Finally, Defendants' claims that their restriction of Ms. Benson's speech was viewpoint neutral do not pass muster. Courts have unanimously held that "'[t]he mere assertion of a content-neutral purpose' is not enough to save government action that, on its face, discriminates based on the viewpoint of a speaker." *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1144-45 (D.C. Cir. 2023) (quoting *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 642-43 (1994)). And, as outlined above, their actions were clearly viewpoint-based.

4. **VIEWPOINT-BASED RESTRICTIONS ON SPEECH VIOLATE THE CONSTITUTION, NO MATTER THE FORUM.**

Notably, Defendants do not refute in their Response that, if this Court were to find that they engaged in viewpoint discrimination, Defendants are liable for violating Ms. Benson's constitutional rights. That is likely because the caselaw is clear that "[a]t the heart of the First

Amendment's Free Speech Clause is the recognition that viewpoint discrimination is uniquely harmful to a free and democratic society." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024); *Frederick Douglass Found., Inc.*, 82 F.4th at 1141 (noting that "viewpoint discrimination is poison"). "The Supreme Court has always distinguished *content* discrimination that is permissible in nonpublic forums from *viewpoint* discrimination that is impermissible." *Am. Freedom Def. Initiative*, 978 F.3d at 498. The Supreme Court reviews "viewpoint discrimination with greater skepticism than it reviews ordinary content discrimination because it raises greater First Amendment red flags." *Id.* Few constitutional doctrines are as firmly established as the principle that "ideologically driven attempts to suppress a particular point of view are presumptively unconstitutional." *Rosenberger*, 515 U.S. at 830.

Importantly, "[i]t is well settled that viewpoint discrimination is a clearly established violation of the First Amendment in any forum." *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 350 (5th Cir. 2001); *see also Summum v. Callaghan*, 130 F.3d 906, 917 (10th Cir. 1997) ("[A]lthough content-based discrimination is permissible in a limited or nonpublic forum if it preserves the purpose of the forum, when the government moves beyond restricting the subject matter of speech and targets 'particular views taken by speakers on a subject,' such viewpoint discrimination is 'presumed impermissible.'" *Rosenberger*, 515 U.S. at 829-30. Therefore, if this Court finds that Defendants denied Ms. Benson's entries to serve on the DPD UOF Review Board because of the viewpoint of her past criticism of the DPD, it does not matter what forum that viewpoint discrimination occurred in.

5. **DEFENDANTS VIOLATED THE FIRST AMENDMENT BY DENYING MS. BENSON THE ABILITY TO APPLY TO SERVE ON THE DPD UOF REVIEW BOARD BASED ON HER PREVIOUS FIRST AMENDMENT PROTECTED SPEECH.**

6

Ms. Benson does not believe that she is guaranteed access to the DPD UOF Review Board. However, contrary to Defendants' arguments, [ECF #14], pp. 10-13, the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972); *Rumsfeld v. Forum for Academic and Institutional Rights*, 547 U.S. 47 (2006) ("[T]he government may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech even if he has no entitlement to that benefit."). Even when the Government can withhold a benefit, "[a]n ordinarily permissible exercise of discretion may become a constitutional deprivation if performed in retaliation for the exercise of a First Amendment right." *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 585 (D.C. Cir. 2002); *Smith v. Maschner*, 899 F.2d 940, 948 (10th Cir. 1990) ("It is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when take for a different reason, would have been proper."); *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977) (holding that even though government employee "could have been discharged for no reason whatever," allegation that decision not to rehire was in retaliation for protected speech stated constitutional claim). Allowing the government to deny generally available benefits based on speech with which it does not agree "would allow the government to produce a result which it could not command directly" in violation of the First Amendment. *Perry*, 408 U.S. at 597.

Courts have applied this well-established rule to a wide range of government benefits from federal funding to tax exemptions to trademarks to government contracts to public-sector employment. *See, e.g., Agency for Int'l Dev. v. All. for Open Soc'y Int'l*, 570 U.S. 205, 213-14 (2013); *Speiser v. Randall*, 357 U.S. 513, 528-29 (1958); *Matal*, 582 U.S. at 243-44 (plurality opinion); *id.* at 248-49 (Kennedy, J., concurring); *Iancu*, 588 U.S. at 393-94; *Bd. of Cnty. Comm'rs*

7

*v. Umbehr*, 518 U.S. 668, 678-81, 686 (1996); *Elrod v. Burns*, 427 U.S. 347, 356-57 (1976). For example, the government could not deny funding to a group based on that group's viewpoint, even though the group had no independent right to receive government funding. *Agency for Int'l Dev.*, 570 U.S. at 218. In another example, artists have no freestanding "right" to government funding by the National Endowment for the Arts, but denying such benefits based on the artists' viewpoints would violate the First Amendment, especially where those views were expressed outside the government benefit altogether (as Ms. Benson's views have been here). *See Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 586-87 (1998). And, by way of another example, "while the AP does not have a constitutional right to enter the Oval Office, it does have a right to not be excluded *because of its viewpoint*[.]" *AP v. Budowich*, No. 1:25-cv-00532 (TNM), 2025 U.S. Dist. LEXIS 66994, at *31 (D.D.C. Apr. 8, 2025) (emphasis in original). By restricting Ms. Benson's ability to even apply for the DPD UOF Review Board based her previous criticism of DPD, Defendants violated Ms. Benson's First Amendment rights. *All. for Open Soc'y Int'l, Inc. v. United States Agency for Int'l Dev.*, 430 F. Supp. 2d 222, 252 (S.D.N.Y. 2006) (holding that "the government cannot place conditions on its granting of public benefits or subsidies that cause the recipient to surrender vital constitutional rights, even if the government has no obligation to provide the benefit and thus could withhold it altogether").

6. **THE SPEECH THAT IS THE SUBJECT OF THIS LITIGATION IS NOT GOVERNMENT SPEECH.**

In determining whether government speech is at issue, the Court considers "(1) whether the forum has historically been used for government speech; (2) whether the public would interpret the speech as being conveyed by the government; and (3) whether the government has maintained control over the speech." *VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1170 (10th Cir. 2021). Contrary to Defendants' arguments, [ECF #14], pp. 12-13, Ms. Benson was retaliated

8

against for private, not government, speech. The forum in which Ms. Benson was criticizing the DPD was in public and not affiliated in any way with Defendants; her lawsuits were filed in federal court on her own behalf, not on behalf of the government. No one would interpret Ms. Benson's previous criticism of DPD as on behalf of the government, nor would they consider her private lawsuits to have been filed in any way by the government. And, Denver had no control over Ms. Benson's previous criticism and lawsuits.

Simply put, Ms. Benson's previous criticism of the DPD and her lawsuits against the DPD were clearly not government speech. And, that is the speech for which Defendants banned Ms. Benson from applying to serve on the DPD UOF Review Board.

7. **DEFENDANTS MAKE NO REBUTTAL TO MS. BENSON'S EVIDENCE THAT SHE WAS RETALIATED AGAINST IN VIOLATION OF HER FIRST AMENDMENT RIGHTS.**

Defendants do not substantively address Ms. Benson's claim that she has suffered retaliation in violation of her First Amendment rights. "Although retaliation connotes retrospective punishment, its greatest danger lies in its prospective silencing effect." *Jenner v. United States DOJ*, Civil Action No. 25-916 (JDB), 2025 U.S. Dist. LEXIS 99015, at *27-28 (D.D.C. May 23, 2025). Ms. Benson's retaliation claim provides a strong, independent basis for prospective relief. *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998) ("The reason why . . . retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right."); *see also, e.g., McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) ("[T]he First Amendment . . . protect[s] unpopular individuals from retaliation—and their ideas from suppression.").

8. **THE COLORADO CONSTITUTION'S FREE SPEECH CLAUSE PROVIDES BROADER PROTECTIONS THAN THE FIRST AMENDMENT.**

Contrary to Defendants' arguments, [ECF #14], p. 5. Ms. Benson's claims under the Colorado Constitution are not analyzed using the same standard as this Court is required to use

9

under the First Amendment. Instead, in Colorado, "[t]he First Amendment is a floor, guaranteeing a high minimum of free speech, while our own Article II, Section 10 is the 'applicable law' under which the freedom of speech in Colorado is further guaranteed." *Bock v. Westminster Mall Co.*, 819 P.2d 55, 59 (Colo. 1991). Colorado's tradition of ensuring a broader freedom of speech than is guaranteed in the United States Constitution is long and well-established. *See, e.g., People v. Ford*, 773 P.2d 1059 (Colo. 1989); *People v. Berger*, 185 Colo. 85, 521 P.2d 1244 (1974); *In Re Hearings Concerning Canon 35*, 296 P.2d 465 (1956); *Cooper v. People*, 13 Colo. 337, 22 P. 790 (1889).

The Colorado Constitution, particularly, provides a broader definition of what constitutes a public forum for free speech. *See Bock*, 819 P.2d at 58; *Lewis v. Colo. Rockies Baseball Club*, 941 P.2d 266, 269 (Colo. 1997). Where the government provides a "municipal service" with a "highly visible governmental presence" and allows for "the liberty to speak and to dissent" then the free speech clause of the Colorado Constitutions subjects actions retaliating against or restricting speech in any way to strict scrutiny review. *Bock*, 819 P.2d at 60, 63. Here, the restrictions on Ms. Benson's speech are subject to greater scrutiny under the Colorado Constitution because Ms. Benson's speech even more clearly occurred at a public forum under Colorado caselaw. In fact, the UOF Review Board itself might be a public forum for speech under Colorado caselaw. For these reasons, this Court should not analyze Ms. Benson's Colorado Constitution claims under the same standard it applies to her First Amendment claims; instead it is required to provide more protection to her free speech rights under the Colorado Constitution.

9. **CONCLUSION**

For the above-outlined reasons, Plaintiff asks that this Court grant her requested injunction and for any other relief that is just and proper.

Dated this 12th day of August 2025.

NEWMAN | MCNULTY

*s/ Andy McNulty*
Andy McNulty
Mari Newman
Madeline Leibin
1490 N. Lafayette Street
Suite 304
Denver, CO 80218
(720) 850 - 5770
andy@newman-mcnulty.com
mari@newman-mcnulty.com
madeline@newman-mcnulty.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all entered counsel of record.

NEWMAN | MCNULTY

*s/ Andy McNulty*
Andy McNulty

11